HARVEY J. SWAN vs. FLORA WARREN & trustee.

Franklin. Sept. 16. — Oct. 28, 1884. C. ALLEN & COLBURN, JJ., absent.

An assignment of " all my right, title, and interest in and to the real and personal
estate of C., intending hereby to convey all right and title of or to property per-
sonal, real, or mixed, which I have or may have, as heir of said C., including also
any right, title, or interest I may have or have now to any sum of money in the
hands of B., derived from the sale by myself and mother of the farm occupied
by father in his lifetime," includes a sum of money derived from such sale, and
deposited in a savings bank by B., who holds the book issued for such deposit
in the name of the assignor, although B., as administrator of C's estate, also
holds a promissory note as part payment for the farm, and the proceeds of a
sale of personal property of the estate.

TRUSTEE PROCESS. The Shelburne Falls Savings Bank,
summoned as trustee, answered that, at the time of the ser-
vice upon it, March 26, 1883, there was $350 held by it and
credited to the defendant on its books. George H. Willson and
James C. Phelps appeared as claimants of the funds in the
hands of the trustee, by virtue of an assignment to them by the
defendant, dated March 2, 1883, of " all my right, title, and in-
terest in and to the real and personal estate of Chipman Lilley,
late of Ashfield, county of Franklin, deceased, intending hereby
to convey all right and title of or to property personal, real, or
mixed, which I have or may have, as heir of the said Chipman
Lilley, including also any right, title, or interest I may have or
have now to any sum of money in the hands of Calvin Bry-
ant, of Ashfield, aforesaid, derived from the sale by myself and
mother of the farm occupied by father in his lifetime." The
defendant was defaulted.

Trial in the Superior Court, without a jury, before *Barker, J.*,
who allowed a bill of exceptions, in substance as follows:

The assignment was duly executed and delivered to the claim-
ants on the day of its date. The defendant is the daughter and
sole heir of Chipman Lilley, late of Ashfield, deceased, and
upon his death, intestate, on January 31, 1882, inherited his
homestead farm, subject to the rights of her mother, his widow.
On February 25, 1882, the defendant and her mother united in
a sale of the homestead farm for the sum of $2100, of which
$1400 was secured by a mortgage and promissory note to the

defendant and her mother jointly. This note and mortgage, at the time of the sale, were delivered to Calvin Bryant, of Ashfield, administrator of the estate of Chipman Lilley, and have remained in his possession ever since. The sum of $700 was paid in money at the time of the sale. The day before the payment, Bryant, the defendant, and her mother were together, the deed was placed in Bryant's hands to be delivered to the purchaser, and it was agreed between Flora and her mother that the $700 should be equally divided between them. The mother then said that she did not know what to do with the money. Bryant proposed that he should deposit it in the Shelburne Falls Savings Bank for them, and both assented to this proposition, the defendant saying nothing. The next day the money was paid to Bryant, neither the defendant nor her mother being present, and, without further conference with either of them, Bryant immediately afterward deposited the money in said bank, $350 in the name of each, and received from the bank the books for the deposits in the name of each of the parties respectively. After the deposit was made, the defendant, who had been married on the night after the money was paid, and who had been informed of the deposit, called at the bank to get some money, and was refused because she did not have the bank-book. She then called on Bryant to obtain some money to purchase some articles of wearing-apparel. Bryant refused to give her money, but offered to purchase the articles for her.

Bryant has retained possession of the bank-books ever since the time of the deposit, in order to prevent the defendant from spending the money too freely, but has not claimed any legal right to the bank-book or to the money deposited. No sum of money, derived from the sale of Chipman Lilley's homestead by the defendant and her mother, was ever in the hands of Bryant, except as above stated.

Bryant had money in his hands, derived from the sale of personal estate of Lilley, and other personal property belonging to said estate at the time of the assignment; and there were no debts due from the estate of Lilley.

The judge ruled that the assignment was not fraudulent as to creditors of the defendant, that the sum in the hands of the trustee was not included in the assignment, and that the trustee

was chargeable therefor; and found for the plaintiff. The claimants alleged exceptions.

*W. Hamlin,* (*F. E. Paige* with him,) for the claimants.

*S. T. Field,* for the plaintiff.

DEVENS, J. If the assignment here in question be construed in the light of the circumstances existing at the time it was made, and so that it shall, if possible, be operative, — doubtful or repugnant expressions receiving such construction as is least favorable to the grantor, — it sufficiently appears that the sum of money here in dispute was assigned to the claimants. The language of the conveyance is that of the assignor, as she has selected the terms; they are to be construed so as to give efficiency to her grant. *Worthington* v. *Hylyer,* 4 Mass. 196, 203. *Eliot* v. *Thatcher,* 2 Met. 44, n. *Johnson* v. *Jordan,* 2 Met. 234.

The more general words of assignment of all right, title, and interest in the estate of Lilley conclude by adding the words, "intending hereby to convey all right and title of and to property personal, real, or mixed, which I have or may have as heir of said Chipman Lilley." These expressions indicate strongly that she intended to convey all the property which she then had in possession derived from that estate, and also all which she was entitled to receive therefrom. The word "heir," as frequently happens, is not used in any exact or technical way. *Minot* v. *Harris,* 132 Mass. 528. The assignor then adds, "including also any right, title, or interest I may have or have now to any sum of money in the hands of Calvin Bryant, of Ashfield, aforesaid, derived from the sale by myself and mother of the farm occupied by father in his lifetime."

There was a sum of money amounting to $350 to which she was entitled, derived from the sale by herself and her mother of the farm described, which had been deposited by Bryant (who had conducted the sale) to her credit in the Shelburne Falls Savings Bank. Omitting the words "in the hands of Calvin Bryant," those used in the assignment accurately describe this sum. They cannot apply to the promissory note taken by Bryant as payment in part for the farm, nor to the proceeds of personal property which he held. "If a man," says Chief Justice Parsons, "convey his house in D., which was formerly R. C.'s, when it was not R. C.'s, but T. C.'s, the house

in D. shall pass, if the grantor had but one house in D., because, by the description of his house in D., the estate intended to be conveyed is sufficiently ascertained." *Worthington* v. *Hylyer*, *ubi supra.* The sum we are discussing in the case at bar was 'not legally in the possession of Bryant, but it is definitely ascertained; and, when we consider the relation which he had to it, the expression " in the hands of Calvin Bryant " might, in ordinary language, well have been used in reference to it. It had never been in the actual possession of the assignor, nor could she obtain possession of it. Bryant held the savings-bank book, had refused to surrender it, or to deliver to her the money, or any part thereof, although he consented to make some small purchases for her. Even if Bryant claimed no legal right over it, he would not give it up, and had entirely controlled it for more than a year.

When the money of one is spoken of as " in the hands of " another, often no more is meant than that the latter is a debtor to the former. The phrase is colloquial and familiar, and not an accurate one. In the assignment in the case at bar, it meant the sum of money which Bryant, by his possession of the bankbook, then controlled, so far at least as to keep it from the assignor.                     *Exceptions sustained.*