JAMES ROUTLEDGE v. EMILIE ELMENDORF ET AL.

Decided February 24, 1909.

1.—Contract—Sale—Claims in Hands of Administrator.

By a sale and transfer by an administrator made under an order of court of all claims, accounts, notes and choses in action "now in the hands of the administrator" and belonging to the estate, a fund held in trust for the estate

did not pass unless it was actually or constructively in the hands of the administrator at the time of the sale.

### 2.—Same—In Hands of—Definition.

The term "in the hands of" means in actual possession, or in such condition that actual possession is legally with the person described as holding it. Property is not in the hands of a person when it is doubtful that he could obtain possession even by invoking the coercive powers of a court.

### 3.—Same.

Where the claim of an estate was of an interest in a trust fund, and it appeared that land from which the fund was realized was conveyed to a trustee with the duty of selling the land and discharging certain debts of those holding the equitable title, and that in pursuance of this duty he sold the land and took notes secured by a lien in part payment of the purchase money, some of which were unpaid, the trust was not executed, the funds being in hands of the trustee, and the administrator of said estate had no right to the possession of any part of it, and the interest of the estate therein did not pass by a sale and transfer by the administrator of all claims, notes, accounts and choses in action "in his hands" at the time of the sale.

### 4.—Same—Issue of Fact—Charge.

Where the sale and transfer by an administrator was of "all claims and choses in action" belonging to the estate "now in the hands of the administrator," the question whether a claim upon a trust fund was in the hands of the administrator was one of fact, and it was proper to submit that issue to the jury.

### 5.—Contract—Intention of Parties—Parol Evidence.

The sale and transfer being of all claims and choses in action belonging to the estate "now in the hands of the administrator," the words in quotation were open to explanation, and evidence that it was not the intention of the parties that a certain claim for an interest in a trust fund in the hands of a trustee should be included in the sale, did not vary the terms of the writing, and was admissible.

### 6.—Statement of Facts—Costs—Stenographer.

Where the appellant applied to the stenographer to make out a statement of facts in narrative form and he made out one embodying the questions and answers, and from this appellant made a statement of facts, he could not have the amount paid the stenographer taxed as costs in the case.

### 7.—Trial by Jury—Discharge of Juror——Disabled Juror—Statute.

Under the provision of the statute that where, pending the trial of any case in the District Court, one or more jurors not exceeding three may be disabled from sitting, the remainder of the jury shall have power to render a verdict, the question of disability must necessarily rest in the judgment and discretion of the trial judge and, unless it should appear that there has been an abuse of such discretion, an Appellate Court will not disturb his action in the premises. Revised Statutes, art. 3229.

### 8.—Same.

Where the court discharged a juror and proceeded with the trial with eleven jurors, the statement by the judge that the juror was drunk and seemed to have no idea of the issues in the case, must be taken as founded on facts, and his judgment that the juror was wholly disabled was sustained. Revised Statutes, art. 3229.

### 9.—Sale—Burden of Proof.

Where the plaintiff claimed an interest in a trust fund belonging to the estate under a sale and transfer of all claims and choses in action in the hands of the administrator at the time of the sale, proof by the defendant that the claim on the trust fund was not in the administrator's hands at such

time, defeated a recovery; and a requested charge that the burden of proof was on defendant to show that such claim had been excepted or reserved from the transfer, was properly refused.

**10.—Administration—Administrator—Heirs—Control of Property after Distribution.**

Where an administration had been continued for the sole purpose of the prosecution of two certain claims of the estate after discharge of all debts and distribution to the heirs of all the assets, and thereafter a suit in the District Court involved the right of the heirs to a certain trust fund belonging to the estate, and was determined in their favor, it was error to render judgment in favor of the administrator, who was also made a party, for the use and benefit of the heirs. The judgment should have been in favor of the heirs.

### ON REHEARING.

**11.—County Court—Powers—Partial Discharge of Administrator.** ·

The Probate Court has full power and authority to grant a partial discharge of the administrator and to hold him further in his position of trust for only specified purposes, especially when he and every one else interested in the estate agrees to it.

**12.—Administration—Distribution—Heirs—Jurisdiction of Probate Court.**

Where the whole matter of administration of an estate was fully closed except as to two certain claims, and all parties interested agreed to discharge the administrator from all liability to that date and that the administration be continued to reduce said claims to possession, and the court so decreed, and also decreed a partition, allotting the property to the heirs in certain proportions, the heirs were the only ones who could defend in a suit in the District Court against a claim upon the property allotted to them, and upon the determination of the suit in their favor judgment should have been for them and not for the administrator. Such a judgment could not be an interference with the jurisdiction of the Probate Court.

**13.—Same—Control of Property after Distribution—Statute.**

Where the administration of the estate of a decedent has been pending for more than twelve months the heirs, devisees or legatees have the right to a distribution of all the estate that can be distributed, and when once distributed the administrator cannot resume control of it. Revised Statutes, arts. 2158 et seq.

**14.—Contract—Intention of Parties—Evidence.**

The primary object in the construction of contracts is to arrive at the intention of the parties. This intention should be arrived at if possible from the words of the writing itself, but if the terms used are not clear in their meaning evidence of the intention of the parties direct is admissible to show the sense in which the words were used.

Appeal from the District Court of Bexar County. Tried below before Hon. J. L. Camp.

*Julius Norton* and *James Routledge,* and *James Routledge,* in propria persona, for appellant.

*Otto Stoffel, Ira P. Hildebrand* and *Onion & Henry,* for appellees.

FLY, Associate Justice.—Mrs. Elise Haseloff Hugo instituted this suit against a large number of persons, which was consolidated with a suit in which James Routledge was the plaintiff and Mrs. Hugo, widow and executrix of Chas. Hugo, deceased, the defendant.

The object of the first named suit was to ascertain the parties to whom a certain trust fund belonged, arising out of the sale of property placed by deed in the hands of her deceased husband, Charles Hugo, on August 4, 1896, for the benefit of B. F. Yoakum, H. D. Kampmann, deceased, A. C. Schryver, Hugo & Schmeltzer and Elmendorf & Company, who were the owners of the equitable title in the property.

It was alleged that on August 4, 1896, Charles Hugo, for the use and benefit of B. F. Yoakum, H. D. Kampmann, deceased, A. C. Schryver, Hugo & Schmeltzer, a partnership composed of Charles Hugo, Gustav Schmeltzer and William Heuermann, and Elmendorf & Company, a partnership composed of Amalie Elmendorf and other persons unknown to the pleader, purchased at sheriff's sale about seventy-nine acres of land, known as the San Antonio Fair Grounds; that at the date of the purchase the beneficiaries named were indebted to the Alamo National Bank in the sum of $19,000, evidenced by their promissory note on which they paid a sufficient sum to reduce the said sum to $15,000, and to secure that sum made another promissory note, and ordered and instructed Charles Hugo, trustee, to dispose of the property held by him and to pay off the note and expenses, and to account for the balance to the beneficiaries. It was alleged that in execution of the trust the property had been sold for $20,000, of which $5,000 was in cash and $15,000 in promissory notes; that the trustee had paid note of the Alamo National Bank and the expenses, and at time of his death had $2,102.23 for account of the beneficiaries. That since his death, which occurred on September 14, 1906, Elise Haseloff Hugo, his executrix, had collected the amount remaining on the notes for the land and held in her possession for distribution among those entitled to it the sum of $10,507.79. It was alleged that H. D. Kampmann was dead, and Elizabeth Kampmann, his widow, had qualified as survivor of the community estate; that the copartnership of Hugo & Schmeltzer had been dissolved, and Hugo & Schmeltzer Co. was claiming the interest of said copartnership; that Amalie Elmendorf was dead and Geo. C. Altgelt was her administrator.

Appellant set up a cross-action in the consolidated suit, and also filed an answer, which pleadings, consisting of some thirty pages of the transcript, amount to a claim of all the trust fund belonging to the estate of Amalie Elmendorf, deceased, by virtue of a certain assignment executed to appellant by the administrator of the estate. Appellant, after alleging the creation of the trust fund as hereinbefore set out, in addition alleged that all the beneficiaries made payments on the notes, but that Schryver after two payments failed and refused to pay any further amounts, but that Schryver contended for a percentage of the trust fund equal to the percentage of the debt paid by him, and it was the contention of appellant that Amalie Elmendorf, whose share he claimed, was entitled to contribution against Schryver, and that before Schryver should be permitted to participate in a division of the fund that he should be charged with the various sums of money that he should have paid on the note.

Vol. LIV Civil—12.

· The heirs of Amalie Elmendorf claimed their share of the trust fund and alleged that the assignment to appellant was null and void.

It was agreed by all the parties to the suit on March 16, 1908, which agreement was embodied in an interlocutory decree, that the total fund, principal and interest, was $10,933.10, out of which should be paid an attorney's fee of $250, and all costs to the date aforesaid; that there be paid to Elizabeth S. Kampmann, both individually and in her representative capacity 22.028 percent of the fund; to Elise Haseloff Hugo, G. Schmeltzer, and George and Lina Heuermann, as independent executors of the estate of Wm. Heuermann, jointly 22.028 percent; to Erna Elmendorf, a minor, 00.734 percent; to Cedric Elmendorf, a minor, 00.734; to James Routledge, 02.937 percent; making a total disposed of by the agreement of 70.489 percent of the fund remaining after deducting costs and attorney's fees. It was provided that the balance of the fund should be placed in the hands of the San Antonio Loan & Trust Company and bear 4-38/100 percent per annum interest, and be subject to the order of the court on sixty days' notice, and that upon payment of the sums named Elise Haseloff Hugo and Victor Hugo should be relieved from any further liability for the fund. It was further stated in the decree that Mrs. Emilie Elmendorf, Dr. E. H. Elmendorf, Mrs. Louis Dreiss and husband, Louis Dreiss, Herman Tolle, Leon Tolle, Emma Tolle, William Netter, Hugo & Schmeltzer Co., a corporation, should take nothing out of the fund. That decree disposed of all interests except that claimed by appellant of A. C. Schryver, G. C. Altgelt as administrator of estate of Amalie Elmendorf, and the heirs of Amalie Elmendorf.

The cause was tried by jury and the court submitted it on one issue alone as follows: "Did the parties interested in the fund in issue in this case, by the execution of the compromise agreement in evidence before you, intend that their interest in the trust fund in the hands of Charles Hugo should be transferred to James Routledge?" To which the jury answered in the negative. Upon that answer the court rendered a judgment that out of the $3,095.67 subject to its orders, $1,247.05 should be apportioned to A. C. Schryver, and that George C. Altgelt, as administrator of the estate of Amalie Elmendorf, should recover the remaining $1,848.62, and that all the other parties, among the number being appellant, take nothing by the suit. Appellant made his motion for a new trial, which being overruled, he perfected an appeal to this court.

We find that the facts show that the claim of the estate of Amalie Elmendorf, deceased, to the trust fund in controversy was not transferred to appellant by the sale to him of the notes, accounts and claims of that estate in the hands of the administrator. The necessary facts in connection with the sale to appellant are fully set forth in the further course of this opinion. Appellant claimed all of the trust fund belonging to the estate of Amalie Elmendorf through an assignment made to him by George C. Altgelt, administrator, which, after reciting that the application to sell had been made by the heirs and creditors of the estate and that the County Court had ordered the sale, is as follows: "Therefore I, George C. Altgelt, in my offi-

cial capacity as administrator of the estate of Amalie Elmendorf, deceased, of Bexar County, Texas, for and in consideration of the premises and the sum of $50 to me in hand this day paid by James Routledge, of Bexar County, Texas, the receipt of which is hereby acknowledged, have bargained, sold, conveyed, transferred and assigned, and do by these presents bargain, sell, convey, transfer and assign unto the said James Routledge, of Bexar County, Texas, all of the accounts, notes, choses in actions, claims and judgments now in my hands of any and every description due and owing by any and all persons to Elmendorf & Co. (so far as the interest of Amalie Elmendorf is concerned), or to the estate of Amalie Elmendorf, deceased; except, however, the claim of George C. Altgelt, administrator, v. Benno Engelke et al., involved in case No. 14758, in 45th District Court, above mentioned, and the claim against city of San Antonio." In applying for the sale the property is described as "all of the accounts, notes, choses in action, claims and judgments now in the hands of the administrator, due and owing by any and all parties," etc.

The right of appellant to any part of the trust fund must turn upon whether it was included in the description given in the application for sale and in assignment made thereunder. The interest of the heirs of Amalie Elmendorf in the trust fund held by Charles Hugo at the time of the sale was undoubtedly covered by the descriptive language "accounts, notes, choses in action, claims and judgments," but that language is qualified by the words, "now in the hands of the administrator," and unless the trust fund was actually or constructively in the hands of the administrator at the time of the sale there was no transfer of it to appellant. The question as to whether it was in the hands of the administrator at the time of the sale was one of fact which could only be determined by a jury, and, therefore, the court did not err in submitting the issue to the jury. If the interest in the trust fund was not in the hands of the administrator, and if the parties did not intend to transfer it, it was not a varying of the written instrument for the jury to find as they did. The first assignment of error is overruled.

The property transferred by the administrator must be restricted to that in "his hands" at the very time of the transfer. It did not refer to anything that might be discovered and reduced to possession by the administrator, but it was a present possession that was referred to. Claims were excepted from the transfer, but they were in the hands of the administrator at that time and collection of them was being prosecuted by him. The term "in the hands of" means, in actual possession or in such condition that actual possession is legally with the person described as holding it. We do not think that property is "in the hands of a person" when it is doubtful that he could obtain possession even by invoking the coercive powers of a court. Mere knowledge of the existence of some sort of claim upon the part of the administrator would not place it in his hands.

The land, from the sale of which the trust fund was realized, was conveyed to Charles Hugo and the legal title was in him. To him was confided the duty of selling the land and discharging the debts

of those who held the equitable title. In pursuance of that duty he sold the land and took notes secured by a vendor's lien in part payment of the purchase money. Some of them were not due when the sale to appellant was made. The trust was not then executed and could not be executed until those notes became due and the debts were paid. The trust fund was in the hands of the trustee, and the administrator of the Amalie Elmendorf estate had no right to the possession of any part of the trust fund. It was not "in the hands of" the administrator at the time of the sale and could not be placed in his hands. The sale did not cover such a claim and it could not have been in contemplation of the parties to the sale.

A number of the heirs of Amalie Elmendorf swore that the sale of the interest of the estate in the Hugo trust fund was never contemplated, but the sale was intended to cover and embrace a lot of claims the evidence of the existence of which was in the hands of the administrator. That this was the case fully appears from the circumstances narrated by appellant as leading up to the sale. He states that while he and others were looking over the property of the estate that one remarked to him: "Why, here are all those old notes and claims of all kinds owing to the estate; suppose you buy those." The reference must have been to the accounts, notes, claims, etc., that were evidenced by inventories, papers or lists of claims then and there present, of which the claim on the trust fund was not one. The trivial price paid for the old claims indicates that there was no intention to convey any but claims that were deemed almost worthless. Appellant testified: "I considered that he was selling me something that was really not worth anything, the chance of being worth anything being very remote because Mr. Altgelt had reported them worthless, and next, Benno Engelke was the client of Mr. Hildebrand and Benno Engelke had been bookkeeper for Elmendorf & Co. for over thirteen years, and that he kept the account books, and I knew that he was the only man in the United States that had an absolute knowledge of whether any of these claims were valuable or not, and I was confident in my own mind he would not be selling them to me for $50 if there was one in there worth over fifty dollars." If this be true, then the claim against the trust fund was not included because Engelke had reported that the estate had a fourth interest in the property from which the trust fund was realized, which interest was worth $3,750.

The sale of the claims to appellant was made, as testified, to expedite a compromise among the heirs of Amalie Elmendorf, and in making the compromise they investigated the property belonging to the estate and it is not pretended that there was any evidence of the claim on the trust fund among the papers, and on the other hand appellant stated that he knew nothing of its existence.

If, however, we discard everything but the language of the transfer itself, there was no transfer of the trust fund, because it was not "in the hands of the administrator" at that time, either actually or constructively. The administrator, George C. Altgelt, did not for that reason return it on the inventory of the estate, and he could not be bound by any inventory theretofore made by a former admin-

istrator, nor even if made by himself under a mistake as to the status of the property. (White v. Shepperd, 16 Texas, 163.) The property in question was in the hands of a trustee who had not executed the trust and it could not have been taken in any manner by the administrator into his hands. The fund was no part of the assets of the estate, but had been set apart by the owners of it to a certain purpose, and any claim against it depended on a contingency which had not happened when the sale of the claims of the estate was made. In his inventory George C. Altgelt did not list certain claims, among which, it may be presumed, was the claim on the trust fund, for the reason, as stated by him, that he had "not yet been able to identify it or reduce it to possession." That undoubtedly was a true and valid reason for not listing the claim on the trust fund. It was never "in his hands" or in those of any former administrator at any time, as fully appears from the testimony. Not being "in his hands" at the time of the transfer of the claims and accounts it did not pass by the transfer.

The construction placed by us on the term "in the hands of" is supported by all decisions coming under our notice. Price v. Society, 30 Atl., 139; Swan v. Warren, 138 Mass., 11; Pruitt v. Armstrong, 56 Ala., 306. In the case first cited it was held that money in a savings bank was in the hands of the person who had deposited it, the reasons given for so holding being: "While in the bank, it was in the hands of an institution conducted for the sole benefit of its depositors, and of which they were the equitable owners; and, although the bills or coins that the pensioner originally left there could no longer be identified, and it might be that they and all the cash funds then belonging to the bank had been loaned out or otherwise invested, it is our opinion that his pension money can fairly be said to have been still in his hands, within the meaning of our statute of exemptions." The test in that case was the power of the pensioner to take his money into his actual possession. He had, in other words, constructive possession of the money in the bank. He had the right to demand and receive, and it was therefore "in his hands."

The fourth, fifth, sixth, seventh, eighth, ninth and eleventh assignments of error attack the action of the court in admitting testimony of the administrator of certain of the heirs of Amalie Elmendorf and of attorneys for some of them as to their knowledge of the existence of the trust fund and as to their intention in connection with it. Appellant testified that no one knew of the existence of the claim on the trust fund except Benno Engelke and that he was confident that the claims would not have been sold to him by Benno Engelke if any one included had been worth fifty dollars. He testified, as to Engelke, as follows: "I knew he had been the administrator of this estate for a period of over a year and that he, by reason of his long service in that business over there, both as bookkeeper and as administrator of the estate, was the man in the best position to know whether the claims were worth anything or not, and I was confident he would not be selling them to me if they were of any value, but I was willing to buy them anyway, to get this compromise through and protect my client." If Benno Engelke was the only man

who knew about the claim, of course, the witnesses did not know, and they swore to nothing on that score but what appellant swore to. If they knew nothing of the existence of the claim, they could not have intended to sell it. The claim on the trust fund was not included in the list of claims nor in the notes given by the administrator to appellant. Appellant showed by his testimony that the claim against the trust fund could not have been included in the claims transferred, "because Mr. Altgelt had reported them worthless." That shows the intention of the parties to convey only the claims that Altgelt had reported, and the trust fund was not reported. We do not think, in view of the admissions of appellant, that he is in a position to complain of the testimony as to knowledge and intention. The administrator swore positively that the claim was never in his hands.

The words "now in the hands of the administrator" were open to explanation, and the court allowed both appellant and appellees to state their intention in regard to their use, and we think that the testimony was permissible. The intention of the parties was the main point, and if it could not be gained from the instrument itself, other evidence could be resorted to. In the case of Smith v. Brown, 66 Texas, 543, the Supreme Court held it permissible to allow a witness to testify as to his intention in executing a deed. The terms of the written instrument were not varied by the evidence objected to. It was merely explanatory. In view of the language of the instrument, the circumstances surrounding the sale, and the admissions of appellant, the evidence objected to could not have injured appellant. Appellant stated that the trust fund was worth about $10,000 when he bought the claims, but that he did not know of its existence. If the claim was not among those in the hands of the administrator, it will not be seriously contended that it was affected by the transfer, and it is apparent from all the circumstances that the parties were contracting with regard to claims actually in the hands of the administrator and subject to his immediate control and disposition. No one knew about the claim unless it was the administrator, who swore that it was not in his hands and consequently could not have been subject to the contract of sale.

It appears from the twelfth assignment of error that appellant applied to the stenographer to make out a statement of facts in narrative form, which he either failed or refused to make, but made out one embodying questions and answers, and from that appellant prepared the statement of facts and he sought to have the amount paid the stenographer for the questions and answers taxed as costs in the case. The court very properly refused to do that and complaint is made of that action. The questions and answers prepared by the stenographer are not a part of the record and it would be an anomalous proceeding to tax them up as costs in this case. Under the law the statement of facts should have been put into narrative form by the stenographer and appellant could have compelled him to comply with that duty, and if he chose to permit the dereliction of duty and paid for a transcript of the evidence illegally prepared, he can not make appellees pay for it. This matter will be unimportant in view of our disposition of the case.

It appears from the bill of exceptions made the basis of the fourteenth assignment of error, that during the course of the trial one of the jurors failed to put in his appearance at the hour to which the court had adjourned, but after some minutes came in an intoxicated condition, although he stated he would be sober in five minutes and would be sober next morning. Appellant sought to postpone the trial until the following day to allow the juror to become sober, but the court discharged the juror and proceeded with the trial with a jury of eleven men. In his qualification of the bill of exceptions the court stated: "That it was evident that the juror was very drunk and when questioned did not seem to have any idea of the issues involved in this suit; and, in my judgment, was wholly disabled from sitting in the case." It is provided in article 3229, Revised Statutes, following the Constitution, that where, pending the trial of any case in the District Court, one or more of the jurors not exceeding three may die or be disabled from sitting, the remainder of the jury shall have power to render the verdict." The question of disability must necessarily rest in the judgment and discretion of the trial judge, and unless it should appear that there has been an abuse of such discretion, an Appellate Court will not disturb his action in the premises. The declaration of the trial judge that the juror was very drunk and that he seemed to have no idea of the issues in the case, must be taken as founded on facts, and his judgment that the juror was wholly disabled must be sustained. There is nothing in the facts stated in the bill of exceptions that militates in any way against the action of the court. It is insisted that the juror did not admit that he was drunk, but that the court concluded that he was intoxicated because of his conduct and answers. The determination as to whether a man is drunk does not usually depend on his admission of the fact, but on the other hand, as experience teaches, is in the face of protestations of being sober. The question as to whether he was drunk and disabled from sitting on the jury was not confided to the judgment of the drunken juror, but to that of the trial judge.

The fifteenth, sixteenth, eighteenth, nineteenth, twentieth, twenty-second and twenty-third assignments of error are disposed of in the discussion of the matters hereinbefore set forth, and the special charge, the refusal of which is made the subject of the seventeenth assignment, was properly refused because the transfer of the claim from Altgelt, administrator, did not on its face transfer the claim to the trust fund to appellant, and the burden did not rest on appellees to show that the claim had been reserved and excepted from the transfer. When it appeared that the claim was not in the hands of the administrator appellees had met the case of appellant without proof of any reservation or exception. Under the facts of the case the court would have been justified in instructing a verdict for appellees.

All of the appellees, except Emilie Netter, George C. Altgelt and A. C. Schryver, have filed a cross-assignment of error in which that part of the judgment is assailed which provides for the payment of $1,848.60 to George C. Altgelt, administrator, for their use and benefit, the contention being that the trust fund ceased to be assets of the estate by virtue of a compromise agreement and decree dated April

20, 1905. In that agreement and decree provision was made for the payment of all the creditors of the estate of Amalie Elmendorf, and the remaining property, with the exception of the Hugo trust fund, was partitioned among the heirs. The following provisions appear in the decree:

"All of said creditors after being paid the amounts aforesaid and receiving the lands aforesaid shall yield all the remainder of said estate to the legatees and devisees of Amalie Elmendorf and thereafter said creditors' claims shall be deemed extinguished, so that they shall not have any further demands upon said estate and so that all the remainder of said estate may vest in said legatees and devisees in accordance with the terms of this decree free and discharged from all debts.

"It is further ordered, adjudged and decreed by the court that the said administrator, Geo. C. Altgelt, be and is hereby directed to make the payments herein provided for, and that thereupon said Altgelt, administrator, as well as the sureties upon his bond shall be discharged from all liability to this date, but the administration shall be continued in order to reduce to possession for the benefit of said legatees and devisees of Amalie Elmendorf, deceased, two certain claims yet outstanding.

"It is ordered, adjudged and decreed by the court that all property of the estate of Amalie Elmendorf not disposed of by this decree shall vest as follows: Mrs. Mary Engelke, wife of Benno Engelke, 1-5; the heirs of Henry Elmendorf, 1-5; the heirs of Emil Elmendorf, 1-5; the heirs of Emilie Netter, 1-5; the heirs of Edward Elmendorf, 1-5. That the claims of the following parties are hereby approved and allowed as claims against said estate for the following amounts, viz.: Otto Staffel, as guardian of Armin, Stella and Edward Elmendorf, and Mary Elmendorf, $3,738.20; Edwin Kampmann, $1,224.05; San Antonio Loan & Trust Co., as guardian of the estate of Emilie Netter, $1,224.05; Dr. W. Netter, $1,224.05; Mrs. Henry Elmendorf, individually and as executrix of the estate of Henry Elmendorf, $3,672.16; Mrs. Emilie Elmendorf, $9,079; Hermann Tolle, individually and as guardian of the estate of Leon and Emma Tolle, $3,672.16; Mrs. Mary Engelke, wife of Benno Engelke, $3,672.16.

"And they each of them do agree to accept the moneys herein set apart to them in payment of their claim and to accept from the estate the property set apart to them herein for the balance due to them on their respective claims and said purchase price and property accepted shall be in full satisfaction of their demands."

It is apparent, we think, from the testimony that the "two certain claims yet outstanding" mentioned in the decree are the two excepted from the transfer to Routledge, because there were at that time no other claims outstanding, the claim on the trust fund not being recognized as being in existence at that time; and because the sale to Routledge which excepted two claims was made about the same time that the decree was entered. The only purpose, therefore, in continuing the administration was the prosecution of the two claims excepted in the transfer to Routledge, and all of the debts being set-

tled there could be no necessity for placing the money from the trust fund in the hands of the administrator and burdening it with the costs that would necessarily arise from its handling by the administrator. It was agreed by all parties "that George C. Altgelt was qualified and acting as administrator of the estate of Amalie Elmendorf, deceased, subject to the limitations and qualifications of the compromise decree and agreement made in said estate on April 20, 1905." That agreement was embodied in the decree of that date and in it, as before stated, the authority of the administrator was limited to the prosecution of two certain claims. The continuance of the administration was limited and had no reference to any other matter except the prosecution of the two certain claims.

The administrator claims in his brief that the decree should not have specified that the fund should be "for the use and benefit of certain persons named in fixed proportions because the trial court was without jurisdiction to order or direct the distribution of said fund." The proposition is that until the close of the administration the County Court had exclusive jurisdiction to decree a partition of the property. Admitting the proposition to be correct, no fault can be found with the decree of the District Court which did not interfere with the jurisdiction of the County Court, but merely followed a decree of the County Court which partitioned all the property of the estate in fixed proportions among the heirs. The decree of the County Court absolutely fixed the several interests of the heirs in the trust fund and they were entitled to their proportionate shares by that decree just as it was decreed in the District Court. The decree of the County Court recognized the existence of other property than that specially mentioned therein because it was "ordered, adjudged and decreed by the court that all property of the estate of Amalie Elmendorf not disposed of by this decree shall vest" in certain proportions in the heirs.

Appellant has no ground of complaint as to the share that was allotted to A. C. Schryver, even though he had any interest in the fund. Schryver had a right to a certain interest in the trust property, and if he desired to accept a less interest that was his business and not that of anyone else. He was not deprived of his interest in the property by a failure to pay his part of the debt, and his deduction of his part of the debt from his share was a voluntary act on his part. He was entitled to what was allotted to him under the agreement between the parties interested in the trust property. Under our view of the case appellant had not acquired any interest in the trust fund and it is immaterial so far as he is concerned as to how it was divided.

The judgment will be reformed so as to allot the money in controversy directly to the different beneficiaries, and as reformed will be affirmed.

*Reformed and affirmed.*

ON MOTION FOR REHEARING.

It is insisted by Geo. C. Altgelt, administrator, that this court erred in entering judgment in favor of the Elmendorf heirs because

it appears from the record that the estate of Amalie Elmendorf is still being administered and it is the duty of the administrator to recover possession of and hold such estate in trust to be disposed of according to law. The record shows that all of the heirs and legatees and all of the creditors of Amalie Elmendorf entered into an agreement which was afterwards with the knowledge and consent of the administrator embodied in a decree, in which it is recited that all the creditors had been paid and the property distributed among the heirs, after which is the following: "It is further ordered, adjudged and decreed by the court that the said administrator, Geo. C. Altgelt, be and is hereby directed to make the payments herein provided for, and that thereupon said Altgelt, administrator, as well as the sureties on his bond, shall be discharged from all liability to this date, but the administration shall be continued in order to reduce to possession for the benefit of said legatees of Amalie Elmendorf, deceased, two certain claims yet outstanding." It is not claimed by the administrators that either of the "claims yet outstanding" was that against the trust fund. Altgelt knew of the existence of the trust fund at that time, and knew that authority over it had been taken from him by the decree. It was admitted that all of the debts had been paid and that the distributees had received their parts of the estate except out of the fund in question. The administrator did not question the authority of the court to discharge him from all further liability in connection with the estate except as to the claim against Benno Engelke and others, and the claim against the city of San Antonio. The property in the hands of the trustee was not discovered after the entry of the decree by the administrator because he swore that he knew of the existence of a claim before that time. But if he had not known of the existence of the claim, the decree of the court, obtained on the petition of every one, heir, devisee, legatee and creditor and acquiesced in by the administrator, deprived him of all authority over anything pertaining to the estate, except the two particular claims excepted. There can be no doubt that the court had full power and authority to grant a partial discharge of the administrator and to hold him further in his position of trust for only specified purposes, especially when he and every one else interested in the estate agreed to it. The whole matter of administration of the estate was fully closed, except as to the two claims. Why the parties did not, as they could have done, close the whole matter and relieve the administrator of all connection with the estate, is not disclosed. It may have been that it was thought better to allow him to proceed with the suit he had instituted, rather than delay their prosecution by the intervention of a large number of parties; but whatever may have been the motive, every one agreed to discharge the administrator from all liability to that date and that the administration be continued to reduce two certain claims to possession.

It was alleged and proved in this case that the administration had been fully settled except as to the two claims herein mentioned, and the heirs of Amalie Elmendorf were the only ones authorized to defend against the claim upon the property allotted to them. The administration of the estate of Amalie Elmendorf had been pending

for more than twelve months and under the statute the heirs, devisees or legatees had the right to a distribution of all the estate that could be distributed, and when once distributed the administrator could not resume control of it. (Rev. Stats., art. 2158 *et seq.*) As said by the Supreme Court in Henderson v. Lindley, 75 Texas, 185: "The result of a rule that would permit the partition of an estate, either in whole or in part, among the heirs, and then allow the administrator to resume control and sell it for the payment of debts, would lead to inextricable confusion and in some cases to great injustice." There was a full partition of the estate, even including the two claims for which the administration was continued, for in the decree "it is ordered, adjudged and decreed by the court that all property of the estate of Amalie Elmendorf not disposed of by this decree shall vest as follows," giving the names of those to whom it was distributed. That decree covered all property of the estate whether known to exist at the time or not. No one could object to it because every one interested in it in any capacity agreed to it. The administrator does not claim that he has incurred any expense or costs that should be paid by the beneficiaries or the estate. If he desired any relief for himself and sureties he should have asked for it. If there were any expenses incurred by the administrator the record does not disclose it.

Under the facts of this case the court would have been authorized to have instructed a verdict as against appellant. There is nothing in the record that tends to show that an admitted and undisputed claim for over three thousand dollars in money was transferred by the heirs of Amalie Elmendorf to appellant for the paltry consideration of fifty dollars. In the petition that sought the compromise and the sale of the note and accounts to appellant, and which he signed, it is stated that all the personal property held by the administrators consisted of "a number of odds and ends of personal property, being all the personal property remaining in the hands of the administrator after conveying the personalty to the Alamo National Bank above mentioned." An undisputed claim to more than three thousand dollars in money would not be denominated "odds and ends." Appellant did not testify that he intended to buy the claim to the trust fund. He was buying the notes and accounts in the hands of the administrator in order to accomplish a compromise for his clients, and not for profit. He knew nothing about the trust fund. His intention as well as that of the other contracting parties, as evidenced by all the circumstances, was to buy the claims evidenced by the papers in the hands of the administrator which he had examined. Had it been error to admit evidence of the intention of the parties and error to submit that issue to the jury, the state of the evidence is such that neither injured appellant. Neither the fund nor a claim to it was in the hands of the administrator, and was not included in the contract of sale. There was no error in not submitting the matter of the intention of appellant to the jury, because his testimony removed that issue from the case. He did not know of the existence of the fund and did not intend to buy anything but a lot of worthless paper in order to bring about a compromise and thereby further the interests of his clients. The consideration of fifty dollars is so grossly inadequate

that the conclusion is irresistibly reached that there could have been no intention to convey the trust fund to appellant. The consideration is so inadequate that the mind revolts at the enforcement of such a contract if it really existed as is claimed, and courts will give the parties who would lose by it the benefit of every doubt in the construction of a contract dependent on such a consideration.

The words "now in the hands of the administrator" should be construed in the light of the circumstances so as to give effect to the intention of the parties. The primary object in the construction of contracts is to arrive at the intention of parties. This intention should be arrived at if possible from the words of the writing itself, but if the terms used are not clear in their meaning evidence of the intention of the parties direct is admissible to show the sense in which the words were used. (Kelly v. Fejervary (Ia.), 83 N. W., 791; Streeter v. Seigman (N. J. Eq.), 48 Atl., 907; Phetteplace v. British & F. M. Ins. Co. (R. I.), 49 Atl., 33; Andrews v. Robertson (Wis.), 87 N. W., 190.) In the case of Lowry v. Adams, 22 Vt., 160, the rule that should govern in regard to the parol testimony as to the intention of the parties is thus clearly stated: "For the purpose of ascertaining the intent of the parties in entering into any contract, courts will look at the situation of the parties making it, the subject matter of the contract, the motives of the parties in entering into it, and the object to be attained by it, and, even in cases where the contract is reduced to writing, will allow all these circumstances to be shown by parol evidence if the intent of the parties upon the face of the contract is doubtful or the language used by them will admit of more than one interpretation." The parol testimony in this case as to intention of the parties was admissible, and showed that the claim against the trust fund was not within the purview of the contract. The motions for rehearing are overruled.

*Overruled.*

Writ of error refused.