### KUTEMAN v. WILLIAMS et al.
#### No. 5555.

Court of Civil Appeals of Texas. Amarillo.
May 31, 1943.

W. T. Link and J. R. Porter, both of Clarendon, for appellant.

Hughes, Hardeman & Wilson, of San Angelo, and Ritchie & Ritchie, of Mineral Wells, for appellees Jerome S. Stone and Beatrice K. Stone.

Albert B. Hall, of Dallas, for appellee Fidelity & Deposit Co. of Maryland.

STOKES, Justice.

The record in this case reveals that James E. Kuteman died on July 18, 1938, and at the time of his death he was the owner of a large amount of real estate consisting, in part, of two cattle ranches, one located in Nolan County and the other in Kent County. He left surviving him as his only heirs-at-law his mother, the appellant, Nellie Kuteman, and his sister, the appellee, Beatrice K. Stone. On August 1, 1938, appellant was appointed by the County Court of Donley County administratrix of the estate of James E. Kuteman, deceased, and she qualified as such on August 5, 1938. About March 11, 1940, appellee, Jerome S. Stone, in behalf of his wife, Beatrice K. Stone, filed a suit in the District Court of Kent County, praying for the appointment of a receiver to take charge of the entire estate of James E. Kuteman, deceased, and for an injunction restraining appellant from in any manner interfering with the receiver in his custody of the property. The petition was presented to the district judge in vacation and the application was granted. Appellee, Guinn Williams, was appointed receiver of the estate and he duly qualified by taking the oath and filing a bond in the sum of $40,000 with the appellee, Fidelity & Deposit Company of Maryland, as surety. On May 3, 1940, appellant filed in that case a plea in which she challenged the jurisdiction of the court and prayed that the receivership be vacated on the ground that an administration of the estate was pending in Donley County; that she was the duly appointed and qualified administratrix thereof; that the receivership instituted in Kent County was an interference with the jurisdiction of the probate court of Donley County;

and that the District Court of Kent County therefore did not have jurisdiction to appoint the receiver. Her motion to vacate the receivership was overruled and she appealed to this Court where her motion was upheld and the receivership dissolved. Kuteman v. Stone, 150 S.W.2d 102.

Notwithstanding the judgment entered by this Court dissolving the receivership, the receiver continued to pay out monies belonging to the estate and at the September, 1941, term of the District Court of Kent County he filed his final report in which he showed he had expended a large sum of money and alleged that he and his attorney had rendered valuable services to the estate for which each of them was entitled to fees and commissions of a considerable sum. Appellant then filed in this Court an application for a writ of prohibition against the district judge in which she sought to prohibit him from taxing the costs of the receivership and the fees of the receiver and his attorney against her or the estate of James E. Kuteman, deceased. The writ of prohibition was granted by this Court on September 9, 1941. Kuteman v. Ratliff, 154 S.W.2d 864.

The instant suit was filed in the District Court of Donley County by appellant in her individual capacity and as administratrix of the estate of James E. Kuteman, deceased, against appellees, Guinn Williams and Fidelity & Deposit Company, the surety on his bond as receiver, alleging that Guinn Williams, while purporting to act as receiver in the Kent County case, had collected and received $45,722.40 of the funds and money of the estate of James E. Kuteman, deceased, and had expended $44,880.91, all of which was without authority of law, since the District Court of Kent County had no jurisdiction to appoint him as receiver of the estate. She sought judgment for this amount against Williams and judgment against the Fidelity & Deposit Company, as his surety, in the sum of $40,000 the penal sum provided by the bond.

The Fidelity & Deposit Company filed a plea of privilege alleging its residence to be in Kent County and that, if it was liable in any respect, such liability was by virtue of the bond executed by it in the receivership proceedings in the District Court of Kent County and that venue of the case was therefore in that county. The plea of privilege was sustained and the venue of the cause was removed to the District Court of Kent County where an-

swers were duly filed by the appellees. The answer of appellee Williams consisted of a plea in abatement upon the ground of non-joinder of parties, alleging that Jerome S. Stone and his wife, Beatrice K. Stone, were necessary and indispensable parties because his liability, if any, was based upon his acts as receiver in the original Kent County suit; that the suit was instituted by Jerome S. Stone at the instance and for the benefit of his wife, Beatrice K. Stone; and that they were liable for all of the costs and expenses incurred in the receivership. Subject to his plea in abatement, appellee Williams filed a cross action against Jerome S. Stone and his wife, in which he prayed for judgment over against them for any amount for which judgment might be rendered against him.

The case was tried before the court without the intervention of a jury on October 16, 1942. It was stipulated upon the trial that the only items in controversy in the instant case were (1) the sum of $4,533.56 which the record shows is one half of the amount paid out by Williams as receiver for attorney's fees, receiver's fees, and other costs incurred in the receivership; (2) the sum of $1,756.43, excess payment by Williams, as receiver, of the inheritance tax due by appellant to the State of Texas; (3) the sum of $200 collected by Williams as rental on real property located at Ringgold, belonging to appellant and not to the estate; (4) the sum of $634.90 paid by Williams for abstracts of title to land located in Clay and Montague Counties belonging to the estate; (5) the sum of $177.46 paid by Williams as premiums for fire insurance policies on buildings located on real estate owned by appellant and not by the estate; and (6) approximately $4,-100, the alleged rental for a period of six months of 25,418 acres of land constituting the Kent County ranch and belonging to the estate, for which he had failed and refused to account to her.

At the conclusion of the trial the court rendered judgment denying appellant any recovery, to which she duly accepted and from which she has perfected an appeal to this Court, contending that the court below erred in a number of particulars, her principal contention being that she was entitled to a judgment against appellees Guinn Williams and Fidelity & Deposit Company, for the aggregate of the items enumerated in the above-mentioned stipulation upon which the case was tried.

The first contention of appellant which we shall notice is that the District Court of Kent County did not have jurisdiction of the cross action filed by appellee Williams against Jerome S. Stone and his wife, because an administration of the estate of James E. Kuteman, deceased, was pending in the County Court of Donley County and the matters involved in the cross action were in interference with that administration. We find nothing in the issues made by the cross action that would interfere with the administration of the estate. Appellant instituted the suit against Williams, both as administratrix and in her personal capacity, seeking to recover certain items which she claimed Williams owed to the estate and certain other items which she claimed he owed to her personally. The items which she claimed he owed to the estate consisted of court costs and other expenses which had been paid by Williams out of the funds of the estate in the receivership case. In the final judgment entered in that case the court adjudged the costs against Jerome S. Stone, and the receivership suit having been instituted by Stone in behalf of his wife, Beatrice K. Stone, Williams contended in the instant case that the ultimate liability therefor was upon the Stones and not upon him. He sought, therefore, to have the Stones made parties in the instant case in order that, in the event judgment should be rendered against him, he could obtain judgment over against them for those items. The jurisdiction of the court attached to the controversy when appellant filed the suit and the court was clothed with authority to permit new parties to be made in order to determine all essential questions raised by the pleadings. Appellant does not contend that Stone and wife were not necessary or proper parties to the suit, but only that the court did not have jurisdiction over the cross action between Williams and the Stones. A determination of the questions raised by the cross action was necessary in order finally to settle all questions and issues existing between the parties, and the court undoubtedly had power to permit new parties to be made and to entertain the issues raised between them. Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063.

There is another reason why the cross action did not in any manner interfere with the administration pending in the County Court of Donley County. On De-

374

cember 12, 1941, after this suit was filed, appellant, Nellie Kuteman, and her daughter, Beatrice K. Stone, who, as we have said, were the only surviving heirs-at-law of James E. Kuteman, deceased, entered into a written contract by which they agreed to adjust and settle all matters and issues existing between them pertaining to the estate and to a partition of the properties and assets belonging to the estate. The contract provided that appellant should receive the Kent County ranch together with other property and that Mrs. Stone should receive the Nolan County ranch together with certain other property of the estate. The testimony showed that all of the debts and obligations of the estate of James E. Kuteman, deceased, had been fully paid long prior to the date on which the contract was executed; that deeds had been duly executed and delivered in which the lands and property of the estate were partitioned between them according to the terms of the contract; and that both Mrs. Kuteman and Mrs. Stone had taken possession of the properties conveyed to them respectively. Thus all matters pertaining to the administration of the estate were fully adjusted and for all practical purposes the estate was fully closed. The record does not show that the estate had been closed by final order of the probate court but, since all of the debts had been paid and both Mrs. Kuteman and Mrs. Stone, the only heirs of the deceased, were fully qualified to receive their portions of the property and had actually done so, all of the property of the estate had been removed from the administration and there was nothing left in the hands of the administratrix. They had a perfect right to enter into the contract of settlement because the administration had been pending for more than a year and, under Article 3602, R.C.S. 1925, they had the right to a partition and distribution of the property involved in the administration. After the estate had been thus partitioned and the heirs had taken into their possession all of the property involved in the administration, to all of which the administratrix had consented by becoming a party thereto, she could not resume control of it. Routledge v. Elmendorf, 54 Tex.Civ.App. 174, 116 S.W. 156. In reality, therefore, the suit was not one between Williams and appellant as administratrix, but was a controversy between Williams and appellant in her personal capacity, and did not in any manner involve property in the course of adminis-

tration. This contention of appellant is therefore without merit and will be overruled.

██ The first item in the stipulation entered into between the parties at the commencement of the trial and which appellant contends she was entitled to recover from the appellee, Guinn Williams, is $4,-533.56. She contends she was entitled to a judgment for this amount because it constituted costs and expenses of the receivership which had been paid by Guinn Williams out of the funds of the estate while he was acting as receiver under an order of the court appointing him, which order was void and beyond the jurisdiction of the court to enter. The total costs of the receivership were $7,033.86. In the final judgment entered by the court in the receivership case, the court found that $2,500 of the costs and expenses had not been paid, and taxed all of the costs of the receivership against Jerome S. Stone, the plaintiff therein. It further provided, however, that no execution should issue because "the judgment has been fully satisfied." We presume this means that, in some manner not disclosed by the judgment in that case, the judgment for the costs and expenses, exclusive of the $2,500, had been satisfied by Jerome S. Stone, although the undisputed evidence in this case showed that the costs that had been paid were paid by Guinn Williams out of monies belonging to the estate. The $2,500 was composed of $2,000 still due the receiver and $500 still due his attorney under former orders of the court, and it may be that they had either waived these balances or they had been settled and satisfied in some manner not revealed by the judgment. Regardless of how the balance of $2,500 had been satisfied, it was not charged against the estate of James E. Kuteman nor against Nellie Kuteman and she therefore had no claim against anyone for that portion of the costs incurred in the receivership. After deducting the amount of $2,500 from the total amount of the costs and expenses of the receivership, there is left $4,533.86 which composes the first item sued for in this case and for which appellant claims she was entitled to a judgment against Guinn Williams and his bondsman. The receivership suit having been instituted by Jerome S. Stone in behalf of his wife, Beatrice K. Stone, she admitted her liability for the costs and alleged in her answer that by virtue of the fact that she owned

one half of the property of the estate, she had, in effect, paid one half of the $4,533.86 which had been paid as costs out of the estate, and admitted she was indebted to appellant for the other half, which was $2,266.93.

The contract of settlement entered into between appellant and Mrs. Stone on December 12, 1941, was general in its nature and did not specify all of the items that were to be conveyed to the respective parties. The matter of ascertaining the descriptions of the lands and making final adjustment according to the general principles embodied in the contract was left for specific adjustment between the attorneys of the parties. At a later date their attorneys made a complete and final adjustment between them based upon the contract of December 12, 1941, in which it was agreed that appellant was indebted to Mrs. Stone in the sum of $2,447.89, and the final partition and settlement were consummated on the basis of that adjustment. As we have already said, Mrs. Stone admitted in her pleadings in this case that she was indebted to appellant in the sum of $2,266.93, which is one half of the court costs in the receivership case sued for herein by appellant, and she offered to credit this amount upon the $2,447.89 which, according to the contract and adjustment between the attorneys of the parties, Mrs. Kuteman owed to Mrs. Stone. To this offer appellant made no objection and does not make an issue concerning it in her brief. If the credit is entered according to Mrs. Stone's pleadings, it would not only discharge the claim of appellant against Williams for the amount of costs paid by him out of funds of the estate belonging to appellant, but would leave appellant indebted to Mrs. Stone in the amount of $180.96. We perceive no reason why the court should not have adjusted the matters between the parties in that manner. While it is true appellant brought her suit against Williams, the former receiver, and was contending that he was indebted to her for the costs, yet Mrs. Stone was ultimately responsible for them because the receivership suit had been instituted by her husband in her behalf and the costs adjudged against him. No purpose could have been subserved by rendering judgment in favor of appellant against Williams and in favor of Williams over against Mrs. Stone and then rendering judgment in favor of Mrs. Stone against

appellant for $2,447.89. At least, appellant has no ground of complaint because she ultimately emerged $180.96 better off than she would have been if the judgments over had been thus entered. Mrs. Stone did not sue for this balance and appellant was therefore relieved of the obligation to pay it.

The next item for which appellant sued was $1,756.43, which all parties admit was an overpayment to that extent by Guinn Williams, as receiver, out of the funds of the estate of James E. Kuteman, deceased, of the inheritance tax owed by appellant to the State of Texas. The record shows that all of the inheritance taxes, both Federal and State, that were due by appellant and Mrs. Stone were paid by the receiver out of money borrowed by him from the Shannon Memorial Hospital at San Angelo in behalf of the estate and for which a lien was executed on the properties of the estate. The loan was for the total sum of $26,000. In the contract of settlement of December 12, 1941, it was agreed that an adjustment was due between appellant and Mrs. Stone with reference to the amount that had been paid by the receiver as inheritance taxes and that each of them was obligated to pay only that portion of the inheritance taxes which was legally chargeable to them respectively. It was also recognized by all parties that appellant, being the mother of James E. Kuteman, deceased, owed to the State of Texas a smaller amount of inheritance taxes than Mrs. Stone, who was his sister. It was stipulated upon the trial that under the contract of December 12, 1941, Mrs. Kuteman's portion of the entire indebtedness to the Shannon Memorial Hospital was $11,503.57. The testimony showed that only a few days before the trial one of appellant's attorneys had gone to San Angelo for the purpose of arranging to pay the amount which appellant owed to the Hospital on the loan made to the receiver. In other words, the testimony is conclusive that appellant was obligated to pay the hospital the amount above mentioned and that she not only had theretofore agreed to the adjustment, but she was arranging to pay it. This can mean only that in adjusting the amount which each of the parties owed on the Hospital loan, under the contract of December 12, 1941, only that portion of the inheritance taxes that was legally chargeable to appellant was included in the portion assumed by her on that loan.

Under the testimony the court was warranted in concluding that appellant had been charged only with her just portion of the State inheritance taxes, and she was therefore not entitled to recover of anyone the second item for which she sued.

The third item was the sum of $200 collected by the receiver as rental on real estate located at Ringgold, which belonged to appellant as her separate property and in which the estate of James E. Kuteman had no interest. The testimony indicates that the receiver took charge of this property along with the property of the estate under the assumption that it belonged to James E. Kuteman at the time of his death. He collected some $200 as rental and placed it in the funds of the estate. The record shows the receiver paid a large amount of taxes on the property of the estate and since one half of the property of the estate belonged to appellant, if this $200 was used to pay the taxes, she benefited to that extent by such payment, and would not be entitled to recover that half of such amount from the receiver. Mrs. Stone owned the remaining half of the property of the estate, however, and if this $200 was used to pay the taxes, she likewise benefited at the expense of appellant to that extent. Recognizing this to be the case, Mrs. Stone, in her answer, admitted the obligation and offered to account to appellant for $100, being one half of the item here sued for, and we think, under the circumstances, the court was warranted in adjusting the matters between them in that manner, because it would leave appellant still indebted to Mrs. Stone in the amount of $80.96.

The fourth item of $634.90 represented money paid by the receiver for abstracts of title to lands of the estate located in Clay and Montague Counties. After the suit was filed, the receiver delivered the abstracts of title to appellant and they were accepted by her in full settlement and satisfaction of this item and it is not further contended for by her.

The fifth item consisted of $177.46 paid by the receiver as premiums on fire insurance policies for insurance on buildings located at Ringgold and belonging to appellant in her separate right. No claim is made by appellant that the insurance effected by the receiver was not necessary nor that she did not receive the full benefit of it. It is not shown that she had other insurance on the property and we must assume that the court found she had benefited by the insurance to the extent of its cost and that she accepted such benefits. No showing is made that she suffered any loss by the action of the receiver in procuring the insurance and it is presumed the court took this into account in entering the judgment.

The sixth and last item included in the stipulation is approximately $4,100, the alleged lease value of the Kent County ranch, consisting of 25,418 acres, for six months at thirty cents per acre per year. Appellant alleged that Williams leased the land for thirty cents per acre per year and failed to account to her for the rentals for six months. The testimony showed that, under orders of the court, Williams leased the land to J. C. Stribling for ten years at thirty cents per acre per year, for which the lessee executed his notes payable to the receiver semiannually over a period of ten years. It is further shown by the evidence that approximately six months elapsed between the date of the lease and the dissolution of the receivership and that Stribling had possession under the lease. It is further shown that after the receivership was dissolved, the receiver delivered all of the Stribling notes to appellant and that she accepted them and attempted to collect the first note which covered the first six months of the lease term. For some reason not shown by the record, the note was not paid although Stribling was solvent and the money to pay the note was available. After her effort to collect the first note had failed, appellant returned all of the notes to the lessee Stribling and possession of the land was delivered to her. It is clear from this that, instead of holding the receiver Williams liable to her, appellant ratified his acts, accepted Stribling as her tenant, took the matter into her own hands and adjusted it in some manner that was satisfactory to her. She did not sue for damages for a trespass, but for the rentals provided in the lease for which, she alleged, Williams had failed to account to her. By taking the matter into her own hands and making an adjustment of it with Stribling, she released the receiver from any obligation concerning the lease and was not entitled to recover of him any portion of the lease rentals.

We have carefully considered all of the assignments of error and contentions presented by appellant and, in our opinion, no error is revealed by any of them. The judgment of the court below will therefore be affirmed.