## BARKER v. ASH. (No. 7731.)

(Court of Civil Appeals of Texas. Dallas. March 31, 1917. Rehearing Denied April 28, 1917.)

1. DEEDS ⬅️70(5)—VALIDITY—FRAUD.

A deed cannot be canceled for fraud where defendant paid more than the land would otherwise bring in bulk, irrespective of what representations regarding its value be made, and although he sold small tracts thereof for higher prices.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 173.]

2. CANCELLATION OF INSTRUMENTS ⬅️34(1)—LACHES—FRAUD OF GRANTEE.

A sister's action against her brother to cancel a deed secured by him from her mother is barred by her lack of diligence when brought 17 years after the conveyance and 3 years after she admitted suspecting that fraudulent representations were made.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 49, 50, 52.]

3. APPEAL AND ERROR ⬅️230—REVIEW—DISCHARGE OF JUROR.

There was no reversible error in discharging a juror because of his child's serious illness and expected death, where no objection was made except by motion for new trial.

4. TRIAL ⬅️345 — VERDICT — WAIVING DEFECTS.

An objection that a verdict was signed only by the foreman and not by the other jurors is waived, where appellant knew the facts when the verdict was returned, but made no objection until a motion for new trial was presented.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 816–820.]

5. JURY ⬅️149—DISCHARGE OF JUROR—ILLNESS OF CHILD.

The serious illness and expected death of a juror's child is sufficient reason for discharging him, since he could not give the case proper consideration.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 635–637.]

6. TRIAL ⬅️323—VERDICT—SIGNATURE OF JURORS—STATUTE.

The statutory requirement that the 11 jurors sign a verdict when the jury is reduced to that number is directory only.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 759.]

Appeal from District Court, Henderson County; John S. Prince, Judge.

Action by Mary A. Barker against John F. Ash. Judgment for defendant, and plaintiff appeals. Affirmed.

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

194 S.W.—30

W. R. Bishop, of Athens, and C. E. Henderson, of Indianapolis, Ind., for appellant. Richardson & Watkins and E. P. Miller, all of Athens, for appellee.

RAINEY, C. J. Appellant sued appellee to cancel two deeds to 3,300 acres of land, one made by Sarah J. Ash to appellee on January 18, 1893, and the other made by appellant to appellee on October 3, 1907, both conveying certain land in Henderson county, Tex., which was alleged to have been procured by fraud and deceit on the part of appellee, and also to recover a one-fourth undivided interest in said land. Appellee answered by general and special exceptions and general denial and by plea of 3, 5 and 10 years' statute of limitation. The case was submitted on special issues to a jury, and upon the return of its answers the court entered a judgment for the appellee, from which judgment this appeal is taken.

The petition, in effect, charges: That on January 18, 1893, said Sarah J. Ash conveyed said land for the consideration of $2,300, and was induced to do so by the representations of appellee, her son, which she believed and relied thereon, that said land was not worth more when in fact it was worth the sum of $10,000. She reposed confidence in appellee and did not inquire into the actual value of said land and she had not discovered its actual value at the time of her death. That appellee was familiar with the value of said land and his representation was made with the intention of having his mother to sell him the land for an inadequate consideration. It was further charged that appellant, appellee, and two others were the only children and sole heirs of Sarah J. Ash, and that after the death of Sarah J. Ash, appellee wrote to appellant that said land was of little value, and that he could not realize anything therefrom, and that she relied on said statement; that she resided in Indiana and never visited Texas until 1908, and knew no one living in said Henderson county but appellee and his family, and did not suspect that said land was worth more than $2,300, and "did not, before October, 1907, make any effort to discover its value, by reason of the repeated statements of her said brother, but relied upon his said statements, and that at his request on October 3, 1907, made him a deed to said land"; that on September 15, 1908, she "suspected that the representations of said defendant so made in 1893 to her said mother as to the value of said land were false; that she made no efforts to determine the truth or falsity thereof and did so quickly thereafter," etc.

The appellant assigns as error the refusal of the court to set aside the verdict of the jury on special issues and in rendering judgment for appellee and not granting a new trial, for the reason that the jury disagreed on all material issues raised by the pleadings

and did not agree on issues sufficiently to support a judgment. There were 45 issues in all submitted to the jury, to 19 of which they answered, "We disagree." These issues, we are of the opinion, were not material, while under the pleadings and evidence the remaining answers were sufficient to have warranted the court in directing a verdict for appellee. We understand that when a case is submitted on special issues the court must render a judgment in accord with the answers returned by the jury. In this instance the answers of the jury to issues controlling as raised by the pleadings were answered favorably to the appellee. The controlling issue raised by the pleadings is, Was the value of the land sold by Sarah J. Ash to John F. Ash on January 18, 1893, of greater value than $2,300, the amount paid therefor, which amount she was induced to receive by the misrepresentations of her son? The jury in answer to this issue as to the value of the land say the land could not have been sold for cash in bulk for more than 50 cents per acre. The price for which she sold was within a fraction of 70 cents per acre.

[1] The evidence shows unquestionably that at the time the land was sold by Sarah J. Ash it could not have been sold to any one for the sum appellee obligated himself to pay. At that time land in Henderson county was not commanding any appreciable price on the market. But it was shown that soon after appellee got title to same he sold some of it in small tracts for several dollars per acre, and appellant contends that this is a circumstance to show that appellee misrepresented the value to his mother. There is no allegation that said land could have been sold in small tracts at a greater sum, and that such fact was not known to Sarah J. Ash. It is also shown that appellee did not reap any special profit by these sales, as he had to take back a majority of the tracts so sold.

Conceding that appellee wrote from Texas to his mother that the land was practically worthless, and that, having full confidence in him, she was induced thereby to sell the land to him for $2,300, it matters not what his representations were, she was not injured by the representations, and, not being injured, there is no legal reason for the cancellation of her deed. She wanted to sell the land, had placed it on the market for sale, and no purchaser had been found, and if she favored her son in this sale, of which there is no evidence, it would not be strange as it is but natural for a mother to favor her son. Mrs. Ash lived about 3½ years after the sale of said land, which was deeded to her son, and there is no evidence showing that she was dissatisfied with the transaction, or that she did not believe she had received an adequate consideration for the land.

Under the pleadings and the facts adduced the court was not justified in submitting any issue to the jury, but should have instructed them to return a verdict for appellee.

[2] Again, we are of the opinion that such time had elapsed, and the circumstances of the case are such that the appellant is not entitled to recover.

The appellee executed his notes for the land, and after the mother's death the appellant, as one of her heirs, collected her portion of the purchase money, and no effort was made by her to ascertain or learn of the fraud with which she charges her brother. She claims that she was lulled into security by letters written by her brother to the effect that times were hard and it was hard to make a living. At the time these letters were written the country was laboring under a pecuniary panic, and about that time he had left the land and was living in the town of Athens, earning a living by manual labor, and there being some technical error in the record of his title, at his request, she executed to him a conveyance of her supposed interest in 1907; which cured said defect. In 1908 she visited Texas to assist her sister, who then had instituted suit against the appellee to recover the land as heir of the father, husband of Sarah J. Ash, and claiming that Mrs. Ash had no title to the land. Appellant charges that at said time she first suspected that appellee had defrauded their mother in the purchase of said land, and in 1911 she instituted this suit, claiming the land as heir of her father, Tislow, and later amended her petition, claiming title as heir of Sarah J. Ash, and seeking to cancel the deeds to her brother on the ground of his fraudulent conduct by misrepresenting the value of the land. From the time of the making of the deed by Sarah J. Ash to appellee until the time appellant sought to recover it as heir of Sarah J. Ash more than 17 years had elapsed, and sufficient diligence is not shown why suit was not sooner brought.

[3] The remaining assignment, in effect, is that the court discharged a juror without the consent of appellant, and in accepting the verdict signed only by the foreman, without requiring the other 11 to sign it. Appellant's bill of exception shows that after the jury retired under the charge of the court, and before a verdict had been returned, on the evening of the 10th of February, the court without consent of appellant or her attorney discharged one of the jurors, and on the next day received the verdict from the 11 remaining jurors, signed only by the foreman. To said bill the court appended the following:

"This bill of exception is allowed with the qualification that the case was argued and submitted to the jury on the afternoon of February 10th, and, after the jury retired and had for time considered of their verdict, that the juror Jasper Henderson received a phone message that his child was dangerously ill and about to die and asked to be discharged. That this information was received just about night, and a

short time before the train went towards the home of the said juror, which was about 25 miles away. That in the judgment of the court, the intelligence received was so serious as to disable and disqualify the juror from a fair consideration of the case, and the court would have discharged the juror even if the parties had been present, and refused to consent to his discharge. The court for such reason discharged the juror Jasper Henderson from further sitting in the case. The fact that the juror was so discharged was known in a few minutes to the counsel for plaintiff. No objection was made to such discharge except in said motion. That as stated in the plaintiff's motion for a new trial, the court on the morning of February 11th (next morning), the court announced that he had discharged the juror for the reason above given. That no objection was made to such discharge by counsel for either party at that time. That the jury continued to consider of their verdict until 10:30 a. m. February 11th, when they returned into open court their findings in the case, and that the same was read in the presence and hearing of the counsel for the plaintiff. That all of the 11 jurors were present. The jury was asked if they had agreed upon their verdict, and informed the court that they had done so far as they could. That their findings were then read, the court reading the signature of the foreman aloud, and the jury discharged, and the counsel for plaintiff was present, and made no objection to the form of the verdict; and the court further shows that the charge as submitted to the jury, which was originally read and inspected by counsel for both parties, showed that the said findings were only to be signed by the foreman, and that there was no objection to said form made at the time, nor until the matter was presented to the court on the motion of plaintiff for a new trial."

We think the discharge of the juror under the circumstances stated by the court is not reversible error.

[4] We are also of the opinion that the receiving of the verdict without the signature thereto of other jurors than the foreman was waived by the appellant, and she will not be heard to complain of the verdict. The appellant's attorney knew, on the night of the 10th of February, that said juror had been discharged; that the remaining jurors were considering of their verdict; was present when the jury returned into court; heard their answers to issues, read and signed alone by the foreman; and knew of its acceptance by the court; and during that time made no objection to the proceeding; nor was any objection made until a motion for new trial was presented.

[5] That the juror was disabled to continue in considering the verdict we cannot for a moment doubt, for his mind, under the circumstances, would be so absorbed by thinking of his sick child that he could not possibly give the case that attention contemplated by the law, and the court did not err in discharging him. Routledge v. Elmendorf, 54 Tex. Civ. App. 174, 116 S. W. 160.

[6] In the case of Dunlap v. Raywood, 43 Tex. Civ. App. 269, 95 S. W. 43, it is held that the statute requiring that the verdict must be signed by the foreman is but directory, and we see no reason why the requirement of the statute that 11 jurors should

sign a verdict when the jury is reduced to that number is not also directory, and we so hold.

As the judgment in this case is amply supported by the evidence, which we think would not authorize any other, it is affirmed.

Affirmed.