## SCHEBESTA v. STEWART.
### No. 12381.

Court of Civil Appeals of Texas. Fort Worth.
Nov. 22, 1930.

Rehearing Denied December 20, 1930.

P. Walter Brown, of Fort Worth, for appellant.

Baskin, Eastus & Greines, of Fort Worth, for appellee.

DUNKLIN, J.

Charles J. Schebesta, as defendant, has appealed from a judgment rendered against him in favor of Z. G. Stewart, as plaintiff, for the sum of $10,150 for commission claimed by plaintiff as a broker in procuring a purchaser for a tract of 406 acres of land owned by the defendant and situated in Tarrant county about one mile southeast of Birdville.

The uncontroverted proof showed that the defendant employed the plaintiff to negotiate a sale of the land and agreed to pay him as commission all over and above $125 an acre that he should realize for the land; that the defendant sold the land for $150 an acre to J. F. Stalcup. The judgment rendered in plaintiff's favor was for $25 an acre, that being the excess over and above $125 an acre realized by the defendant.

The following are the issues submitted to the jury with their findings thereon:

"I instruct you that 'producing cause' as that term is used in this charge, means any act or series of acts set in motion, by the efforts of which, continuing in an unbroken chain of cause and effect from their inception, was produced the result or thing done,

"1. Were the acts of Stewart the producing cause of the sale of the farm in question, as shown by the evidence in this case? Answer: Yes.

"2. If you have answered No. 1 'No,' then do not answer No. 2, but if you have answered it 'Yes', then answer: At the time Schebesta made the deed to Stalcup, did Schebesta know that Stewart was the producing cause, if he was, of that sale of the farm? Answer: Yes.

"3. Did the plaintiff agree to accept the rights and benefits to be obtained by him under the agreement marked as defendant's exhibit No. 5, being dated the 16th day of July, 1928, as full payment of sums claimed by him to be due him, arising out of the sale by Schebesta of the farm in question? Answer: No.

"4. Did Stewart, prior to the delivery of the deed by Schebesta to Stalcup, state in substance that he would not claim any commissions out of such conveyance by Schebesta? Answer: No.

"5. Did Schebesta, at the time he delivered the deed to Stalcup, believe that Stewart would not claim any commission in connection with such sale? Answer: No."

After the trial of the case before the jury had proceeded for about a half day, the court excused one of the jurors and the trial judge proceeded with the remaining eleven, all of whom signed the verdict.

Two assignments of error are presented, one to the action of the court in excusing the juror and the other to the trial of the case before the remaining eleven. The bill of ex-

-ception taken to those rulings contains the following recitals: "Carl N. Chambers received a telegram stating that his father was dangerously ill, near Tulsa, Oklahoma, advising him to come at once if he wished to see his father alive. This telegram was exhibited to the judge, and it appearing to the court that the said juror was then and there physically ill, trembling, eyes and nose running, pulling his hair, his voice hoarse, and there-, by rendered physically unable to sit further as a juror in this cause, the judge over the objection of the defendant Charles J. Schebesta excused said juror from further service, and the attorney of said Charles J. Schebesta further excepted and objected to the proceeding of the trial with eleven (11) men, which objection was by the court overruled, and the defendant Schebesta was forced to proceed with the trial with the remaining (11) jurors."

Article 5, § 13, of the Constitution of Texas, contains this provision: "When pending the trial of any case, one or more jurors, not ex-ceeding three, may die, or be disabled from sitting, the remainder of the jury shall have the power to render the verdict."

Article 2204, Rev. Civ. Statutes of 1925, reads as follows: "Pending a trial of a civil -case in the district court, where one or more jurors may die or be disabled from sitting, if there be as many as nine of the jurors re-maining, those remaining may render and return a verdict; but in such case the verdict must be signed by each juror rendering it."

In H. & T. C. Ry. Co. v. Waller, 56 Tex. 337, it was held that: "A juror is not 'disabled from sitting' within the meaning of the con-stitution by mere distress of mind. Such distress, caused by information of sickness in his family, calling for his presence at home, might be a sufficient cause for suspending the progress of the trial, if in the judgment of the court the emergency required such a course. But this is not the character of disability which the constitution classes side by side with death. If a juror becomes so sick as to be unable to sit longer, he is plainly disabled from sitting. Ray v. State, 4 Tex. App. 454. If by reason of some casualty or otherwise he is physically prostrated, so as to be wholly incapable of sitting as a juror, or loses his mental powers, so as to become insane or idiotic, then too he would be disabled from acting as a juror."

In the case of Ray v. State, 4 Tex. App. 455, it is said: "The discharge or retention of the juror was a matter addressed to the sound discretion of the court, and the explanatory statement of the judge to the bill of ex-ceptions shows that that discretion was not only not abused, but that it was exercised with all necessary caution."

In Barker v. Ash, 194 S. W. 465, 467, by the Dallas Court of Civil Appeals, in which a writ of error was refused, it appears that a juror was excused after he had received a message that his child was dangerously ill and about to die. The bill of exception taken to the action of the trial judge in excusing the juror recited that: "In the judgment of the court, the intelligence received was so serious as to disable and disqualify the juror from a fair consideration of the case."

In disposing of the assignment of error to that ruling, the court had this to say: "That the juror was disabled to continue in considering the verdict we cannot for a moment doubt, for his mind, under the circumstances, would be so absorbed by thinking of his sick child that he could not possibly give the case that attention contemplated by the law, and the court did not err in discharging him. Routledge v. Elmendorf, 54 Tex. Civ. App. 174, 116 S. W. 160."

Appellant has cited also the case of Jackson v. Coats & Sons (Tex. Civ. App.) 43 S. W. 24, in which it is held that the county court was without authority to discharge one of the jurors after the trial had begun, but, as shown in the opinion there rendered, that decision was based on the fact that section 17, article 5, of the Constitution provides that a jury in the county court shall consist of 6 men, with no provision made for verdicts to be rendered by a less number than 6; and in the same opinion it is pointed out that section 13 of the same article provides that in the district court a verdict may be rendered by a less number than 12 men under certain circumstances.

Another authority cited by appellant, Zarate v. Villareal (Tex. Civ. App.) 155 S. W. 328, 334, has no material bearing upon the question under discussion.

It will be noted that in the case at bar the trial judge found that the "juror was then and there physically ill, trembling, eyes and nose running, pulling his hair, his voice hoarse, and thereby rendered physically unable to sit further as a juror." Under the facts so found, there was no error in excusing the juror, and, therefore, the assignment of error now under discussion will be overruled.

The testimony showed that, after plaintiff was employed by the defendant to find a purchaser for the land, he first offered the property to G. A. Teague, who was anxious to buy, but was unable to furnish the cash consideration, and in order to consummate the purchase he made several efforts to interest other parties to go in with him in the purchase, and finally succeeded in inducing C. B. Burkhart and Homer Baughman to join him in the purchase, all of whom then began negotiating with the defendant, and the negotiations finally culminated in an agreement to purchase the property. They employed J. F. Stalcup to take the deed in his name and then

transfer the property to C. B. Burkhart to be held for the use and benefit of himself, Teague, and Baughman. The deed from the defendant to Stalcup recited a cash consideration paid of $4,500 and the assumption of a great many lien notes outstanding against the property. Burkhart furnished the cash consideration recited in the Stalcup deed, and the deed to him from Stalcup recited that he took the property subject to the outstanding liens; there being no contract of assumption of those liens. Stalcup was paid a consideration of $100 by Burkhart for the part so taken by him in the transaction, with the full understanding that he was to have no interest whatever in the property.

Contemporaneously with the negotiations leading up to the sale of the property, the plaintiff, who held a lease on 18 acres of land near the land in controversy, on which he was operating a gravel pit, entered into an agreement with Teague, Baughman, and Burkhart to transfer his lease on the 18 acres, together with some machinery he was using to mine gravel thereon, and also certain contracts he had to furnish gravel to other persons in consideration of the agreement of those parties to employ him for a stipulated wage for work in the business of mining gravel from the land purchased.

The evidence showed that the 406 acres in controversy were purchased for the purpose of mining gravel therefrom, and that prior to the conveyance from Stalcup to Burkhart a written agreement was made by and between Stalcup as party of the first part and Burkhart and Baughman of the second part that the first party would convey the land to parties of the second part, and the second parties agreed to advance the cash consideration to be paid to defendant recited in the latter's deed to Stalcup. In that contract Stalcup further agreed, among other things, to procure an assignment to second parties by Z. G. Stewart of mining contract held by him from one J. G. Brownfield in connection with a gravel pit, which the evidence showed to be on the 18 acres held by Stewart under lease from Brownfield, together with an assignment of all machinery and assets owned and used by Stewart in working that gravel pit; and Stalcup further agreed to procure Teague's ratification of that assignment by Stewart and also his assignment of any interest which he (Teague) might have in the same venture. In that agreement it was further stipulated that Stewart and Teague should be employed by Burkhart and Baughman in the operation of a gravel pit on the 406 acres at stated salaries for each for stipulated periods and subject to termination on stated conditions; and that, in addition to the salary to be paid to Stewart, he was also to be paid $1,000 as a further consideration for his assignment noted above. There was a further stipulation that neither Stewart nor

Teague should have any authority to make any contracts in connection with the mining operations by parties of the second part, except such as should be first approved by Burkhart and Baughman. That contract was executed by Stalcup, Burkhart, and Baughman only, and neither Stewart nor Teague was a party to it. The date of its execution was July 16, 1928, while the deed from Stalcup to Burkhart was executed three days later, to wit, July 19, 1928; and in that deed the prior contract was not referred to or in any manner made a part of the consideration of the conveyance; the only consideration recited in the deed being a cash consideration of $4,500 paid by Burkhart, coupled with a further stipulation that the conveyance was made subject to the incumbrances then outstanding against the land, with no stipulation for Burkhart's assumption of those debts against the land.

■ In defendant's answer that written contract was made the basis of a separate defense to the effect that there was an agreement between Stewart, Teague, Burkhart, and Baughman to have defendant make the deed to Burkhart for the benefit of all four of the persons named who would thereafter operate the gravel business jointly and for their joint benefit, using the 406 acres and that acquired from Stewart and Teague all together for the prosecution of that venture; and that, by reason of the fact that he was a party to that agreement, Stewart is precluded from a recovery of the commission sued for in this case. And in support of that defense defendant introduced the written contract noted above between Stalcup, Burkhart, and Baughman. Under the circumstances just stated, defendant is in no position to complain of the submission of that defense, the purport of which was embodied in special issue No. 3; and hence the assignment of error to the submission of that issue, based on the contention that it was an immaterial issue, is overruled.

■ According to the testimony of Stewart, corroborated by that of other witnesses, his agreement to assign to the purchasers of the 406 acres in the event of such purchase was separate and distinct from the agreement to purchase, nor did that testimony in any manner contradict or vary the terms of the preliminary written agreement of purchase and sale made between Stalcup, Burkhart, and Baughman, three days prior to the deed from Stalcup to Burkhart. It follows, therefore, that there is no merit in the assignment to the admission of testimony of plaintiff to the effect that his agreement to assign to the purchasers of the 406 acres his lease on the 18 acres from Thompson with his machinery used on that lease, in consideration that Burkhart and Baughman would employ him in their gravel business for a stated salary, and payment to him of $1,000 additional was

no part of the executed contract of purchase and sale of the 406 acres made the basis of his suit, the ground of objection urged to that testimony being that it "called for a conclusion of the witness and that the transaction inquired about was evidenced by a contract in writing." Fidelity Union Fire Ins. Co. v. McDonald (Tex. Civ. App.) 249 S. W. 538.

■■ Error has been assigned to the action of the court in permitting J. F. Stalcup and G. A. Teague to testify as witnesses for plaintiff after being placed under rule by the court. The bills of exception taken by defendant to those rulings recite his objections to the testimony, which were, in substance, that during a recess in the trial Mr. Greines had had the court reporter to read to him in the presence and hearing of those witnesses some of the testimony theretofore given in the case. The bills show that when those objections were urged, and before any rulings thereon, Mr. Greines and the court reporter both testified under oath to the effect that the court reporter had failed to understand some answer of one of the witnesses, and in order to get his notes straight he had requested Mr. Greines' assistance in supplying the omission, and to that end he invited Mr. Greines to go out in the hall where some of the testimony was read over to Mr. Greines in order to give the connection with that which the reporter had failed to note; that during the reading of such testimony Teague and Stalcup were in the hall a short distance away and probably too far to understand what was said. The court further examined both those witnesses fully as to just how much they did hear, and on what points, and, after a thorough investigation of the facts, overruled the objections; and it seems quite clear to us that those rulings do not constitute reversible error; especially since the trial judge is vested with a large discretion in the determination of the merits of such an objection. I. & G. N. Ry. Co. v. Hugen, 45 Tex. Civ. App. 326, 100 S. W. 1000; M., K. & T. Ry. Co. v. Pacheco (Tex. Civ. App.) 185 S. W. 1051, and decisions there cited; Dowdy v. Furtner (Tex. Civ. App.) 198 S. W. 647, 649; Stout v. Myers (Tex. Civ. App.) 242 S. W. 1109, 1111; Dunnagan v. Lackey (Tex. Civ. App.) 283 S. W. 927.

■ The witness Stalcup testified that Teague wanted the deed made to Stalcup because he (Teague) could not hold property in his own name. Objection was made to that testimony on the ground: "Because it was a conversation between two witnesses in this cause when Schebesta, the defendant, was not present." Error has been assigned to that ruling. It is a sufficient answer to this to say that the bill does not show that the defendant was not present at the time. Furthermore, the testimony of Stalcup embodied in the statement of facts was that the defendant was present when Teague made the same statement, and other witnesses testified to the same

effect, and also that the defendant likewise consented to that agreement in order to avoid payment of a commission to plaintiff for making the sale. Moreover, we believe that plaintiff was entitled to show that the sale was made to Burkhart through Stalcup as an intermediary, even though defendant was not apprised of that fact, provided that he could show that he was the procuring cause of the sale.

■ Complaint is made of the refusal of the trial court to submit to the jury certain issues requested by defendant inquiring whether or not the deed to Stalcup and the deed from him to Burkhart were both made for the purpose of conveying to plaintiff Stewart, jointly with Baughman, Burkhart, and Teague, title to an undivided interest in the 406 acres of land. But in appellant's brief no evidence is pointed out tending to support a finding in the affirmative on that issue. Indeed, as pointed out already in this opinion, the testimony introduced was sufficient to conclusively refute such a finding. In appellant's brief it is contended that one of the issues so requested was sufficient to present a plea of estoppel against plaintiff to claim the commission, without pointing out which of the issues presented that defense, and in our opinion none of them was based solely upon a desired primary finding that Stalcup was a joint purchaser with Burkhart, Baughman, and Teague; and none of those requested issues present any issue as to whether or not the defendant was misled by the arrangements so made to purchase the property by having the deed first made to Stalcup and a conveyance from Stalcup to Burkhart.

Error has been assigned to the definition of "producing cause," as given in the court's charge. Upon the trial of the case defendant made this objection to the definition so given: "The words, 'producing cause' instead of 'procuring cause' are used because it does not imply an (a?) continued sequence unbroken by any new and independent intervening cause, and a definition of such cause."

Appellant has cited the following from the opinion in Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W.(2d) 570: "Proximate cause is that cause which in a natural and continued sequence, unbroken by any new independent cause, produces an event, and without which that event would not have occurred, and to be the proximate cause of an event it must have been reasonably anticipated by a person of ordinary prudence that the injury or some similar injury would occur. There may be more than one proximate cause of an event." That definition was given in a suit for damages resulting from alleged negligence which was claimed to be the proximate cause of the injury sustained, and manifestly some portions of the definition have no application here.

In Rio Bravo Oil Co. v. Matthews (Tex. Civ. App.) 20 S.W.(2d) 342, 347, which was a case of like character to the one last cited, it was said that terms "proximate cause," "producing cause," and "procuring cause" are all in legal effect the same. In that opinion it was further said: "We do not think the court erred in refusing to define the term 'natural and continued sequence.' These are ordinary words of simple meaning, and under the holding of the Commission of Appeals, expressly approved by the Supreme Court, in Robertson & Mueller v. Holden, 1 S.W.(2d) 570, the court was not required to define this term."

In each of those cases it was held that, upon objection made thereto, the court should have included in his instruction the element of new and independent cause with a proper explanation of the meaning thereof.

■■ But appellant has pointed out no testimony in this case to support a finding that there was any intervening cause between the efforts first begun by the plaintiff to sell the property and the final consummation of the sale. Indeed the testimony conclusively refuted such a contention. And, hence, there was no basis for a charge submitting the issue of any intervening cause which broke the sequence of plaintiff's efforts to consummate the sale. Furthermore, the charge given was a substantial copy of the one given and approved in Custer v. Thaxton (Tex. Civ. App.) 287 S. W. 528, which, like the present suit was for recovery of a broker's commission for sale of property. This assignment is therefore overruled.

The alleged newly discovered testimony of W. J. Blair was made as one of the grounds urged for a new trial. Blair's affidavit, attached to the motion, was to the effect that on or about April 1, 1928, Teague suggested to affiant that he had an opportunity to purchase the land in controversy with the request that affiant look it over with a view of going in with him (Teague) to buy it. That Teague further told him that the land belonged to a man living near Ennis who had a nephew by the name of Lewis White; that White had shown Teague the property and was to get a commission of $10,000 for selling it, and proposed to affiant to take over the property in affiant's name, Teague to furnish $5,000 for the cash payment and affiant to execute notes for the deferred payments; that a deed was made out to affiant in accordance with that agreement and placed in escrow to await the raising of the cash consideration by Teague, but the trade finally failed to consummation by reason of Teague's failure so to do. That during all of those negotiations Teague never told affiant that Stewart was in any way interested in the transaction, but on the contrary informed him that Lewis White was the one who had shown him the property and was to receive a commission if the trade went through; that during all of those negotiations White claimed to be assisting Teague in trying to raise the cash payment, and claimed that he was entitled to a commission; that after those negotiations were finally abandoned Teague told him that Stalcup had bought the property; that Teague was going to operate the gravel pit; that, during the time that affiant was checking gravel in the pit, plaintiff came out and worked as foreman in the pit, but never at any time claimed that he was entitled to any commission for the sale to Stalcup.

Defendant's affidavit was likewise attached to the motion, and in that affidavit he stated that he did not know before the trial of any alleged representations by Teague to Blair.

■■ The affidavit so made by defendant was the only showing offered to excuse his failure to procure the testimony of Blair on the trial of the case, and we believe that it was insufficient to show diligence in that respect; especially since the evidence without controversy was that a deed was executed by the defendant to Blair in the first instance; that the defendant well knew that Teague was the one who negotiated that sale; that the deed was put up in escrow awaiting the payment of the cash consideration and was finally taken down for failure to raise the money. Those facts were sufficient to suggest to defendant, in the exercise of due diligence that he interviewed Blair for the purpose of learning through him whether or not Teague had made any representations along the lines related in Blair's affidavit. Furthermore, the newly discovered testimony of Blair was in part mere hearsay, in part negative only, and in part would be admissible only for the purpose of impeaching or discrediting the testimony given in the case by Teague, which ordinarily is not a sufficient showing for a new trial on account of such evidence.

We conclude that the court did not abuse his discretion in refusing to grant a new trial on the ground of newly discovered evidence. St. Louis, B. & O. Ry. Co. v. Cole (Tex. Com. App.) 14 S.W.(2d) 1024, 1025; Parks v. M. K. & T. Ry. Co. (Tex. Civ. App.) 19 S.W.(2d) 373, 377; Bradley v. T. & P. Ry. Co. (Tex. Com. App.) 1 S.W.(2d) 861, 865; Ferguson v. Jackson (Tex. Civ. App.) 248 S. W. 66, 67; Allen v. Camaros (Tex. Civ. App.) 247 S. W. 333.

For the reasons noted, all assignments of error are overruled, and the judgment is affirmed.