**Hector O. YANES, M.D., Petitioner,**

v.

**Mollie SOWARDS and G.A. Sowards, Respondents.**

No. 98–0047.

Supreme Court of Texas.

April 22, 1999.

Rehearing Overruled Aug. 26, 1999.

M. Steve Nagle, Michael A. Ysasaga, Max E. Freeman, II, Richard Craig Baker, Dallas, for Petitioner.

Bill Liebbe, Lucinda Lynn Stanford, Dallas, for Respondents.

PER CURIAM.

The issue here is whether the trial court abused its discretion by dismissing a juror whose grandfather was ill and not expected to live, and proceeding with only eleven jurors. We hold that it did not. We therefore reverse the court of appeals' judgment and render judgment that respondent take nothing.

Mollie and G.A. Sowards sued Hector O. Yanes, M.D., alleging that Yanes operated on the wrong artery during Mollie's coronary artery bypass surgery. During the second day of testimony, juror Christopher Obregon notified the trial court that his grandfather was in the hospital dying from an E-coli infection. The trial court interviewed Obregon about his grandfather's condition and the effect it would have on his ability to concentrate on the evidence at trial:

> MR. OBREGON: My grandpa, Robert H. Williams, was in the hospital a week and a half ago, and we found out last night that he has E-coli, and they think he might pass away from—Anyway, it was supposed to be from last night to whenever it last until he get worse to where he can't handle it.

THE COURT: And are you telling me that you think that could be today?

MR. OBREGON: Yes.

THE COURT: All right. And where were you last night?

MR. OBREGON: All Saints Hospital.

THE COURT: All right. Is that where he is?

MR. OBREGON: Uh-huh.

THE COURT: The one over here in the medical district, a mile or so away?

MR. OBREGON: Uh-huh.

THE COURT: All right. Is the rest of your family there?

MR. OBREGON: Uh-huh. My mom has been there every day.

. . . .

THE COURT: All right. Is this circumstance going to or not going to interfere with your ability to listen to and understand and pay attention to the evidence that you are hearing?

MR. OBREGON: It'll distract me.

THE COURT: I mean, is that a, yes, it is going to interfere, or it is not going to interfere?

MR. OBREGON: Yes, sir.

THE COURT: All right. Are you telling me that you don't think that you can pay attention due to the problem that has developed?

MR. OBREGON: Yes.

Based on the foregoing interview, the trial court found that Obregon was disabled under Rule 292 because he would be unable to concentrate, understand, or appreciate the evidence.[1] Counsel for both parties objected to this finding. They complained that the trial court's questions were overly suggestive and that Obregon's responses to them did not show that he would be absolutely unable to concentrate

on the case. Nevertheless, both parties refused the trial court's invitation to question Obregon themselves.

The trial court denied the Sowards' mistrial motion, and the trial proceeded before the remaining eleven jurors. The remaining eleven jurors found unanimously for Yanes, and the trial court rendered judgment on the verdict. The court of appeals reversed and remanded the case for a new trial. 955 S.W.2d 456, 459.

■ The Texas Constitution and Texas Rules of Civil Procedure require a district-court jury to consist of twelve original jurors, but as few as nine may render and return a verdict if the others die or become "disabled from sitting."[2] "[T]rial courts have broad discretion in determining whether a juror is 'disabled from sitting' when there is evidence of constitutional disqualification."[3] But not just any inconvenience or delay is a disability. A constitutional disability must be in the nature of "an actual physical or mental incapacity."[4] In *McDaniel*, we held that a juror who was temporarily unable to return to the courthouse because of heavy flooding was not thereby disabled from sitting.[5]

The present case is distinguishable from *McDaniel*. In *McDaniel*, the juror was "temporarily detained by flooding caused by heavy rain, which is at most a transient physical barrier."[6] It did not affect the juror's mental capacity to understand or concentrate on the evidence at trial. Also, the trial could have resumed as soon as the flooding receded. Here, by contrast, the sickness and impending death of Obregon's grandfather affected Obregon's mental capacity indefinitely.

1. *See* Tex.R. Civ. P. 292.

2. Tex. Const. art. 5, § 13; Tex R. Civ. P. 292.

3. *McDaniel v. Yarbrough*, 898 S.W.2d 251, 253 (Tex.1995).

4. *See id.; see also Carrillo v. State*, 597 S.W.2d 769, 771 (Tex.Crim.App.1980) (holding that only jurors who suffer a physical, emotional, or mental disability are constitutionally disabled within the meaning of Article 5, Section 13 of the Texas Constitution).

5. *See* 898 S.W.2d at 253.

6. *Id.*

In *McDaniel,* this Court cited extensively to *Houston & Texas Central Ry. Co. v. Waller*[7] in which the trial court dismissed a juror because of the illness of a loved one, as in this case. The court of appeals interpreted *Waller* to categorically state "that an illness in the family is not a constitutional disqualification that will allow the trial to continue after the juror's dismissal."[8] We disagree.

In *Waller,* juror Thomas Bradbury's wife wrote to inform him that one of their children was sick and asked him "to come home *if he could.*"[9] The trial court, after reading the letter, asked Bradbury if the letter "satisfied him that it was necessary for him to be at home to attend his sick child."[10] Bradbury answered, with apparent distress, that it did.[11] Over the objection of the defendant's attorneys the trial court discharged Bradbury and continued the trial with the remaining eleven jurors. This Court reversed, stating that:

> the causes which disable the juror from sitting, and justify the extreme course of allowing, over a party's objection, a verdict to be rendered by the remainder of the jury, must be of a nature more directly showing his physical or mental incapacity than mere mental distress occasioned by the sickness of others, and the feeling that duty to the sick demanded his presence elsewhere.[12]

The present case is distinguishable from *Waller.* In *Waller,* the trial court asked Bradbury only about his sense of paternal duty, not what effect the knowledge of his child's sickness would have on his mental capacity to fully and fairly perform his jury duty.[13] Although Bradbury was mentally distressed, there was no evidence that his distress prevented him from discharging his job as a juror. Here, by contrast, the trial court elicited testimony from juror Obregon indicating that he would be distracted and unable to pay attention due to his grandfather's condition. Moreover, the trial court gave the Sowards the opportunity, which they declined, to question Obregon further to support their contention that Obregon was not "absolutely" unable to concentrate or act fairly. The trial court's finding of disability is supported by Obregon's testimony, which tended to show that he not only suffered "mere mental distress," but also was emotionally and psychologically disabled from sitting.

After *Waller* was decided, several Texas courts acknowledged that serious illness or death in the family may sufficiently affect a juror's mental or emotional condition to render the juror disabled from sitting. In *Barker v. Ash,*[14] for example, the trial court granted a juror's request to be discharged after he learned that his child was dangerously ill and about to die. The trial court wrote that "the intelligence received was so serious as to disable and disqualify the juror from a fair consideration of the case."[15] The court of appeals affirmed, explaining that the juror's "mind, under the circumstances, would be so absorbed by thinking of his sick child that he could not possibly give the case that attention contemplated by the law...."[16]

In *Schebesta v. Stewart*[17] the trial court excused a juror who was advised "to come at once if he wished to see his father alive."[18] The court of appeals affirmed,

7. 56 Tex. 331 (1882).

8. 955 S.W.2d at 459.

9. 56 Tex. at 337 (emphasis added).

10. *Id.*

11. *Id.*

12. *Id.* at 337–38.

13. *See id* at 337.

14. 194 S.W. 465 (Tex.Civ.App.—Dallas 1917, writ ref'd).

15. *Id.* at 467.

16. *Id.*

17. 37 S.W.2d 781 (Tex.Civ.App.—Fort Worth 1930, writ dism'd).

18. *Id.* at 783.

distinguishing *Waller* on the basis that the "juror was then and there physically ill, trembling, eyes and nose running, pulling his hair, his voice hoarse, and thereby rendered physically unable to sit further as a juror." [19]

The Court of Criminal Appeals has also confronted the constitutionality of proceeding with fewer than twelve jurors or ordering a new trial when one juror becomes emotionally disabled due to a family member's death or illness. In *Woodward v. State* [20] the trial court was informed that juror Daggett's seven-year old son was dangerously ill and would probably die. The child's physician said that surgery was probably needed and that "it would be absolutely necessary for him to be attended by his father." [21] The trial court found that Daggett was no longer in a mental condition to serve upon the jury, discharged the jury, ordered a new trial, and struck out the defendant's plea of former jeopardy. [22] The Court of Criminal Appeals held that the second trial was not barred by double jeopardy:

> That which unfits a juror for the performance of his duty creates a legal necessity, and such unfitness may result from mental suffering, no less than from physical pain. As civilization and refinement have progressed, there has been a growing disposition on the part of the courts to recognize the influence of the feelings and emotions upon the mind, as producing this necessity.
>
> . . . .
>
> ... Observation teaches us, if, indeed, we have not learned from sad experience, that the natural result of information suddenly imparted to a father of the death of a child is to unfit him for the time to attend to business. It would have been cruel to have required the juror to remain on the jury under such circumstances. His grief would naturally unfit him for the discharge of such an important duty; and if ... the object of the trial is to obtain a fair, just, and impartial verdict, there is little prospect of it, under such circumstances. [23]

■ In summary, we conclude if the death or serious illness of a family member renders a juror unable to discharge his responsibilities, trial may proceed with fewer than twelve jurors. Obregon's responses to the trial court's questions support the conclusion that he was emotionally disabled and unable to discharge his responsibilities because of the serious illness of his grandfather. Therefore, we hold that the trial court did not abuse its discretion by concluding that Obregon was disabled from sitting, dismissing him, and continuing with eleven jurors. According-

---

19. *Id.* (internal quotes omitted); *see also Southern Pac. Transp. Co. v. Peralez*, 546 S.W.2d 88, 97 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.) (holding there was no abuse of discretion in discharge of juror who became "disturbed and unable to serve as a juror because of the illness of a member of her family").

20. 42 Tex.Crim. 188, 58 S.W. 135, 136 (1900).

21. *Id.* at 138.

22. *See id.*

23. *Id.* at 140 (internal quotation marks omitted); *see also Torres v. State*, 91 Tex.Crim. 386, 238 S.W. 928, 929 (1922) (holding that discharge of jury after juror's brother died was justified because "[d]eath and illness nigh to death are the most disturbing factors to the human mind when they come to our loved ones, and care for the dead and dying is one of the strongest calls upon affection and humanity"); *Allen v. State*, 867 S.W.2d 427, 429–30 (Tex.App.—Beaumont 1993, no pet.) (acknowledging that juror whose aunt and brother-in-law both died within twenty-four hour period was distracted and could not be fair and impartial); *Wells v. State*, 762 S.W.2d 673, 674–75 (Tex.App.—Texarkana 1988, pet. ref'd) (acknowledging that juror who suffered death in family was too distraught to continue); *Ex Parte Simpson*, 750 S.W.2d 388, 389 (Tex.App.—Fort Worth, pet. ref'd) (holding that there was no abuse of discretion in declaring a mistrial after juror learned that her husband had suffered a massive heart attack); *Mills v. State*, 747 S.W.2d 818, 820 (Tex. App.—Dallas 1987, no pet.) (recognizing that juror whose *grandfather* died and who testified that he could not keep his mind on the case if not allowed to attend the service was emotionally disabled).

ly, this Court grants Yanes's petition for review, and under Texas Rule of Appellate Procedure 59.1, without hearing oral argument, reverses the court of appeals' judgment and renders judgment that the Sowards take nothing.