

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-11-00409-CV

## IN THE INTEREST OF A.P., K.P., AND E.P., CHILDREN,

_____

**From the 85th District Court
Brazos County, Texas
Trial Court No. 10-002922-CV-85**

## MEMORANDUM  OPINION

In one issue, appellant E.D.P. complains that the trial court abused its discretion in allowing the jury trial on the termination of his parental rights to proceed with fewer than twelve jurors.  We will affirm.

The Texas Department of Family and Protective Services sought to terminate the parental rights of E.D.P. and D.R. (who is not appealing) to their three children.  On the second day of trial, the trial court received notice that a juror's grandfather had suddenly passed away.  The trial court questioned the juror, who responded:

> Well, my—my grandfather, this morning at 3:00 a.m., passed away from pneumonia.  He had fluid on his lungs, and he wasn't able to swallow.  So it's something that happened yesterday as I was in court that I did not find out until I got home last night.
>
> …

I mean, my mind—if—if I was here, my mind would not be here. My mind is with my mom right now. I mean, that was my—my last living grandparent.

E.D.P.'s trial counsel asked whether the strain and stress with the immediacy of the event would make it difficult or impossible for the juror to concentrate during trial, to which the juror responded: "Difficult. My aunt has Sturge-Weber Syndrome, which is a very—it's a disability that she's had for her entire life. So, my mom is the actual primary caregiver of her; and it's—I just—where I need to be … is with her." The juror also said he would not be able to "give full attention and consideration to the instructions of law and the testimony presented" if he remained on the jury.

The trial court concluded that the juror was disabled, excused him from jury service, and proceeded with eleven jurors. E.D.P.'s objection to proceeding with eleven jurors and motion for mistrial were overruled, and the trial continued. The remaining jurors ultimately rendered a unanimous verdict that E.D.P. violated subsections 161.001(1)(D) and (E) of the Family Code and that termination of E.D.P.'s parental rights was in the best interest of the children. E.D.P. did not object to the form of the jury's verdict, nor did he request that the jury be polled. The trial court signed an order terminating E.D.P.'s parental rights. In his sole issue, E.D.P. contends that the trial court abused its discretion in determining that the juror was constitutionally disabled, denying his motion for a mistrial, and allowing trial to proceed with fewer than twelve jurors.

"The Texas Constitution and Texas Rules of Civil Procedure require a district-

court jury to consist of twelve original jurors, but as few as nine may render and return a verdict if the others die or become disabled from sitting."[1]  *Yanes v. Sowards*, 996 S.W.2d 849, 850 (Tex. 1999) (citing Tex. Const. art. V, § 13; Tex. R. Civ. P. 292) (internal quotations omitted).  "Trial courts have broad discretion in determining whether a juror is disabled from sitting when there is evidence of constitutional disqualification."  *McDaniel v. Yarbrough*, 898 S.W.2d 251, 253 (Tex. 1995); *see Yanes*, 996 S.W.2d at 850.  However, "not just any inconvenience or delay is a disability."  *Yanes*, 996 S.W.2d at 850.  "A constitutional disability must be in the nature of an actual physical or mental incapacity."  *Id.* (citing *McDaniel*, 898 S.W.2d at 253; *Carrillo v. State*, 597 S.W.2d 769, 771 (Tex. Crim. App. 1980) (holding that only jurors who suffer physical, emotional, or mental disability are constitutionally disabled within meaning of Article V, Section 13 of the Texas Constitution) (internal quotations omitted).  In *McDaniel*, the Texas Supreme Court held that a juror who was temporarily prevented from returning to the courthouse because of heavy flooding was not constitutionally disabled.  898 S.W.2d at 253.  In *Yanes*, however, the Texas Supreme Court held that "if the death or serious illness of a family member renders a juror unable to discharge his responsibilities, trial may proceed with fewer than twelve jurors."  996 S.W.2d at 852.

The trial court has discretion to grant or deny a motion for mistrial.  *Onstad v. Wright*, 54 S.W.3d 799, 808 (Tex. App.—Texarkana 2001, pet. denied).  In reviewing the trial court's denial of a motion for mistrial, an appellate court does not substitute its

---

[1] Article V, Section 13 of the Texas Constitution provides in part:  "When, pending the trial of any case, one or more jurors not exceeding three, may die, or be disabled from sitting, the remainder of the jury shall have the power to render the verdict… ."  Tex. Const. art. V, § 13.

judgment for that of the trial court; instead, it decides whether the trial court's decision constitutes an abuse of discretion. *In re R.N.*, 356 S.W.3d 568, 575 (Tex. App.—Texarkana 2011, no pet.) (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Onstad*, 54 S.W.3d at 808). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002).

In arguing that the trial court abused its discretion in this matter, E.D.P. relies heavily on the Texas Supreme Court's decision in *Houston & Texas Central Ry. v. Waller*, 56 Tex. 331 (1882) and argues that *Yanes* is distinguishable because the alleged mental disability in this case was transient in nature. In *Waller*, a juror received a letter from his wife notifying him that one of their children was sick and asked him "to come home if he could." 56 Tex. at 337. The extent of the child's sickness was not discussed. The trial court, after reading the letter, asked the juror if the letter "satisfied him that it was necessary for him to be home to attend his sick child." *Id.* The juror answered, with apparent distress, that it did. *Id.* The trial court subsequently dismissed the juror over the objection of the defendant's attorneys and resumed the trial with eleven jurors. *Id.* The supreme court concluded that the juror was "not disabled from sitting within the meaning of the constitution by mere distress of mind." *Id.* (internal quotations omitted). The court stated:

> Such distress, caused by information of sickness in his family, calling for his presence at home, might be sufficient cause for suspending the progress of the trial, if in the judgment of the court the emergency required such a course. But this is not the character of disability which the constitution classes side by side with death. If a juror becomes so sick as

to be unable to sit longer, he is plainly disabled from sitting. If by reason of some casualty or otherwise he is physically prostrated, so as to be wholly incapable of sitting as a juror, or loses his mental powers, so as to become insane or idiotic, then too he would be disabled from acting as a juror. But, without deeming it proper to attempt to define fully the meaning of the expression used in the constitution, we are satisfied that the causes which disable the juror from sitting, and justify the extreme course of allowing, over a party's objection, a verdict to be rendered by the remainder of the jury, must be of a nature more directly showing his physical or mental incapacity than mere mental distress occasioned by the sickness of others, and the feeling that duty to the sick demanded his presence elsewhere. Extreme cases of the kind, however strongly they may appear to the court to release the juror, do not belong to the class provided for by the constitution or statute.

*Id.* at 337-38 (internal citations omitted).

On the other hand, in *Yanes*, the supreme court specifically rejected the argument being made by E.D.P.—that *Waller* categorically states "that an illness in the family is not a constitutional disqualification that will allow the trial to continue after the juror's dismissal." 996 S.W.2d at 851. The *Yanes* court noted:

The present case is distinguishable from *Waller*. In *Waller*, the trial court asked [the juror] only about his sense of paternal duty, not what effect the knowledge of his child's sickness would have on his mental capacity to fully and fairly perform his jury duty. Although [the juror] was mentally distressed, there was no evidence that his distress prevented him from discharging his job as a juror. Here, by contrast, the trial court elicited testimony from juror Obregon indicating that he would be distracted and unable to pay attention due to his grandfather's condition. Moreover, the trial court gave [appellees] the opportunity, which they declined, to question Obregon further to support their contention that Obregon was not "absolutely unable to concentrate or act fairly. The trial court's finding of disability is supported by Obregon's testimony, which tended to show that he not only suffered "mere mental distress," but also was emotionally and psychologically disabled from sitting.

*Id.* Ultimately, the *Yanes* court held:

If the death or serious illness of a family member renders a juror unable to

discharge his responsibilities, trial may proceed with fewer than twelve jurors. Obregon's responses to the trial court's questions support the conclusion that he was emotionally disabled and unable to discharge his responsibilities because of the serious illness of his grandfather. Therefore, we hold that the trial court did not abuse its discretion by concluding that Obregon was disabled from sitting, dismissing him, and continuing with eleven jurors.

*Id.* at 852.

The circumstances involved in this case are analogous to those in *Yanes*. Here, both the trial court and E.D.P.'s trial counsel questioned the juror regarding his ability to concentrate and act fairly. The dismissed juror testified that his grandfather had passed away on the evening of the first day of trial, and because of this incident, the juror stated that he would not be able to give full attention and consideration to the instructions of law provided by the trial court. In fact, the juror specifically stated that "my mind would not be here. My mind is with my mom right now." The trial court's finding of disability is supported by the juror's testimony, which tended to show that he not only suffered "mere mental distress" pertaining to the sudden death of his grandfather, but he also was emotionally and psychologically disabled from sitting. *See id.* at 851-52; *see also Barker v. Ash*, 194 S.W. 465, 466-67 (Tex. Civ. App.—Dallas 1917, writ ref'd) (concluding that juror was disabled based on information juror received stating that his child was dangerously ill and about to die).

E.D.P. also argues that the juror's disability was transient in nature and did not affect his capacity to sit as a juror indefinitely. Under questioning, the juror said that his family hoped that his grandfather's funeral would be on Thursday of that week. In response, the trial court stated: "And for the record, we anticipate still being in trial

here on Thursday."[2]  E.D.P. assumes that the juror's disability would pass immediately after the funeral—a speculative assumption.

Furthermore, E.D.P.'s reliance on *McDaniel* to support this argument is unpersuasive.  There, the juror was "temporarily detained by flooding caused by heavy rain, which is at most a transient physical barrier."  *McDaniel*, 898 S.W.2d at 253.  And, unlike this case, in *McDaniel*, there was no testimony taken from the juror regarding her mental capacity to understand or concentrate on the evidence at trial.  *Id.*  The transient physical barrier in *McDaniel* is not similar to the sudden death of a family member.

Based on the foregoing, we cannot say that the trial court abused its discretion in concluding that the juror was disabled and dismissing him, denying E.D.P.'s motion for mistrial, and proceeding with eleven jurors.  Accordingly, we overrule E.D.P.'s sole issue and affirm the judgment of the trial court.


REX D. DAVIS
Justice

Before Chief Justice Gray,
  Justice Davis, and
  Justice Scoggins
Affirmed
Opinion delivered and filed May 30, 2012
[CV06]

---

[2] The juror informed the trial court of this incident on the second day of trial, a Tuesday, and trial testimony did conclude on Thursday.